635 P.2d 998

**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**Catherine Leslie ROMERO, Angel Martinez, and Loretta Ann Sanchez,**
**Defendants-Appellants.**

**No. 5132.**

Court of Appeals of New Mexico.

Oct. 1, 1981.

John B. Bigelow, Chief Public Defender, Lynne Corr, Asst. State Appellate Defender, Santa Fe, for defendants-appellants.

William Walker, Albuquerque, for Ms. Martinez.

A. J. Ferrara, Albuquerque, for Ms. Sanchez.

Deborah Lee Bohl, Albuquerque, for Ms. Romero.

Jeff Bingaman, Atty. Gen., Carol Vigil, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee; Stephen A. Slusher, Mark J. Riley, John E. DuBois, Asst. Dist. Attys., Albuquerque, of counsel.

## OPINION

WOOD, Judge.

After being granted use immunity, defendants refused to testify, as witnesses, in a children's court proceeding. Defendants, at the time of their appearances before the children's court, were represented by counsel. Each defendant was held in contempt of court and sentenced to ninety days in jail. Each defendant appeals. The claim in the docketing statement, that summary contempt proceedings were improper, has not been briefed and, thus, was abandoned. *State v. Gallegos*, 92 N.M. 336, 587 P.2d 1347 (Ct.App.1978). We discuss: (1) the trial court's authority to grant use immunity; (2) use immunity and the privilege against self-incrimination; and (3) use immunity and the right to counsel.

*Trial Court's Authority to Grant Use Immunity*

A petition to revoke a child's probation alleged the child had committed several felonies in connection with the death of Joe Benta. The asserted felonies were aggravated burglary, armed robbery, murder and conspiracy. Defendants claim they have been indicted on the same charges; the State does not contest this claim.

Evidence Rule 412 provides for use immunity:

> Evidence compelled under an order requiring testimony . . . or any information directly or indirectly derived from such evidence, may not be used against the person compelled to testify . . . except a prosecution for perjury committed in the course of the testimony or in a contempt proceeding for failure to comply with the order.

Rule of Crim. Proc. 58 states the procedure for obtaining an order to compel testimony. No claim is made that this procedure was not followed. The prosecutor applied in writing for an order compelling these defendants to testify and the children's court, by written order, granted the application and directed the defendants to testify, under penalty of contempt of court. The order contained the findings required

by R.Crim.Proc. 58(b), and recited that the State had stipulated to use immunity. See Evidence Rule 412. After entry of this order, each defendant was called to testify in the children's court proceeding; each defendant, advised by counsel, refused to testify; and each defendant was held in contempt.

The prosecutor's application for use immunity relied on Evidence Rule 412, R.Crim.Proc. 58 and § 31–3A–1, N.M.S.A. 1978 (1981 Cum.Supp.). In granting the application, the children's court did not identify the authority on which it relied. Defendants assert that § 31–3A–1 did not authorize the grant of use immunity in this case.

Laws 1979, ch. 337 contains thirteen sections; twelve of those sections refer to proceedings before the grand jury. The one section that does not refer to grand jury proceedings is § 10, on use immunity, compiled as § 31–3A–1. Because the title to Laws 1979, ch. 337 is, *"An Act Relating to Grand Juries; Providing Safeguards and Improving Procedures"*, defendants assert the use immunity provided by § 31–3A–1 is limited to proceedings before a grand jury.

■ There is no ambiguity in § 31–3A–1; thus, we do not look to the title to determine legislative intent. As worded, § 31–3A–1 is not limited to grand jury proceedings. See *State v. Ellenberger*, 96 N.M. 287, 629 P.2d 1216 (1981). The question, in light of *Ellenberger*, is whether § 31–3A–1 must be limited to grand jury proceedings in order to meet the title requirements of N.M.Const., art. IV, § 16. It is unnecessary to answer this question.

■ If § 31–3A–1 is limited to grand jury proceedings, then that statute authorized the use immunity granted by the children's court.

If § 31–3A–1 is not limited to grand jury proceedings, then Evidence Rule 412 authorized the use immunity granted by the children's court. *Campos v. State*, 91 N.M. 745, 580 P.2d 966 (1978); *State v. Gabaldon*, 92 N.M. 230, 585 P.2d 1352 (Ct.App.1978); see *State v. McGee*, 95 N.M. 317, 621 P.2d 1129

(Ct.App.1980); *State v. Archunde*, 91 N.M. 682, 579 P.2d 808 (Ct.App.1978).

*Use Immunity and the Privilege Against Self-Incrimination*

*Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), held that "immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege." *Kastigar* explains that the concern of the privilege against self-incrimination is to afford protection against being forced to give testimony leading to the infliction of penalties for criminal acts. "Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness." (Emphasis in original.)

It was argued in *Kastigar* that use and derivative-use immunity subjected a witness to various possible incriminatory uses of compelled testimony, such as "leads, names of witnesses, or other information not otherwise available that might result in a prosecution"; that it would be difficult to identify "the subtle ways in which the compelled testimony may disadvantage a witness". The answer, in *Kastigar*, is that once a defendant demonstrates that he has testified under a grant of immunity, the prosecution has the burden of proof. This burden "imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony."

■ Defendants contend that *Kastigar* is inapplicable because that case involved answering questions before a grand jury under a grant of immunity. Defendants assert that because they had been indicted, and were actual defendants rather than potential defendants, *Kastigar* somehow does not apply. This argument is specious. The privilege against self-incrimination does not turn upon the type of proceeding, but the exposure involved. *State v. Archunde*, supra. Inasmuch as their testimony in the children's court could not be used against them directly or indirectly, and because the compelled testimony could not be used against them in any respect, there was no exposure to self-incrimination from compelled testimony, whether or not they had been indicted.

The grant of use immunity did not violate the privilege against self-incrimination. Compare *State v. DeSantos*, 91 N.M. 428, 575 P.2d 612 (Ct.App.1978); *State v. Smith*, 88 N.M. 541, 543 P.2d 834 (Ct.App.1975).

*Use Immunity and the Right to Counsel*

■ Because of the grant of use immunity to indicted, but untried, defendants, they claim a due process violation in that the grant "interferes with 'the guiding hand of counsel' guaranteed to an accused by the Sixth and Fourteenth Amendments of the United States Constitution." Defendants assert that compelled testimony would disclose to the prosecution "any defense each may have" in advance of trial, that such disclosure would not occur absent the order to testify and, thus, disclosure deprives them of effective assistance of counsel which is asserted to be a violation of due process. Defendants contend that the disclosure order interferes with counsel's determination of trial strategy regarding whether defendants should or should not testify at their own trials. Just how this theoretical disclosure deprives defendants of the right to counsel is not shown; nevertheless, we answer this contention on the merits. See *State v. Smith*, supra.

In *Lakeside v. Oregon*, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978), the trial court instructed the jury that the failure of a defendant to testify gave rise to no inference against the defendant and was not to be considered in determining guilt or innocence. Defendant argued that giving the instruction, over defendant's objection, interfered with counsel's trial strategy and interfered with defendant's right to assistance of counsel. *Lakeside* states:

The argument is an ingenious one, but, as a matter of federal constitutional law, it falls on its own weight once the petitioner's primary argument has been rejected. In sum, if the instruction was itself constitutionally accurate, and if the giving of it over counsel's objection did not violate the Fifth and Fourteenth Amendments, then the petitioner's right to the assistance of counsel was not denied when the judge gave the instruction.

The right to the assistance of counsel "has never been understood to confer upon defense counsel the power to veto the wholly permissible action of the trial judge." *Lakeside v. Oregon.*

In *State v. Allen*, 91 N.M. 759, 581 P.2d 22 (Ct.App.1978), we rejected the contention that the absence of a pretrial ruling on the admissibility of evidence impermissibly interfered with defendant's right to counsel, relying on *Lakeside v. Oregon*. We reject the contentions of defendants in these appeals. The grant of use immunity by the children's court was constitutionally accurate and did not violate the privilege against self-incrimination. Defendants' right to counsel was not denied by permissible action of the children's court in granting immunity. *Lakeside v. Oregon.*

The judgments and sentences for contempt are affirmed.

IT IS SO ORDERED.

WALTERS and DONNELLY, JJ., concur.