667 P.2d 978

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Carl CASE, Defendant-Appellant.**

**No. 6080.**

Court of Appeals of New Mexico.

July 12, 1983.

Janet E. Clow, Chief Public Defender, David Stafford, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Paul Bardacke, Atty. Gen., William H. Lazar, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Judge.

Case was found to be in contempt of court and sentenced therefor. His appeal raises questions concerning the trial court's authority to summarily adjudicate the contempt and concerning procedural requirements for such an adjudication. We discuss: (1) authority for summary adjudication; (2) the number of contempts; (3) punishment; (4) right to counsel; (5) defenses; (6) the propriety of the trial court adjudicating the contempts; and (7) disposition.

*Summary Adjudication*

Case was convicted of murder and criminal sexual penetration in the first degree. The victim was Nancy Mitchell; Case testified in his own defense. He was represented by attorney Mitchell. He was sentenced to penitentiary terms of life and eighteen years, to be served consecutively.

Worley was also charged with crimes in which Nancy Mitchell was the victim. Although we are not informed of the charges against Worley, there is no issue as to the relevancy of questions addressed to Case in the Worley trial.

Case refused to answer ten questions in the Worley trial; he was summarily found to be in contempt for his refusal to answer.

Case contends that a summary adjudication of contempt was improper. He asserts that summary contempt proceedings are limited to situations where it is necessary to maintain order in the courtroom in order to control disruptive activities. He asserts that his refusal to answer questions did not disturb the deliberative atmosphere of the courtroom and, thus, the trial court lacked authority to proceed summarily. He relies on cases which involved disruptive activities, see *Matter of Klecan,* 93 N.M. 637, 603 P.2d 1094 (1979). He disregards cases involving a refusal to answer after the trial court instructed the witness that the witness was required to answer.

In *State v. Sanchez,* 89 N.M. 673, 678, 556 P.2d 359 (Ct.App.1976), we cited *United States v. Wilson,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), in support of our statement "that a refusal to answer questions in the presence of the court is a proper matter to be dealt with summarily[.]" *United States v. Wilson* states:

The refusals were contemptuous of judicial authority because they were intentional obstructions of court proceedings that literally disrupted the progress of the trial and hence the orderly administration of justice. *Yates v. United States,* 227 F.2d 844 (CA9 1955). Respondents' contumacious silence, after a valid grant of immunity followed by an explicit, unambiguous order to testify, impeded the due course of Anderson's trial perhaps more so than violent conduct in the courtroom. Violent disruptions can be cured swiftly by bodily removing the offender from the courtroom, or by physical restraints, *Illinois v. Allen, supra* [397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353]; see *Ex parte Terry,* 128 U.S. 289 [9 S.Ct. 77, 32 L.Ed. 405] (1888), and the trial may proceed. But as this case demonstrates, a contumacious refusal to answer not only

frustrates the inquiry but can destroy a prosecution. Here it was a prosecution; the same kind of contumacious conduct could, in another setting, destroy a defendant's ability to establish a case.

The face-to-face refusal to comply with the court's order itself constituted an affront to the court, and when that kind of refusal disrupts and frustrates an ongoing proceeding, as it did here, summary contempt must be available to vindicate the authority of the court as well as to provide the recalcitrant witness with some incentive to testify. [*Id.* 421 U.S. at 315–316, 95 S.Ct. at 1806.]

*Number of Contempts*

In calling Case as a witness the prosecution sought, and the trial court granted, "use immunity" to Case in connection with his testimony at Worley's trial. *See State v. Romero,* 96 N.M. 795, 635 P.2d 998 (Ct. App.1981); *compare United States v. Wilson.* In signing the order, the trial court remarked that the grant of immunity was unnecessary because Case "does not, in the Court's opinion, have a right against self-incrimination on any matter that he testified to previously."

After answering some background questions, Case refused to answer when asked if he knew Worley; "I'm not going to say anything until I get my lawyer . . . ." The trial court told Case that he had no right to remain silent, that Case was ordered to answer the question, that each refusal to answer would be a "direct criminal contempt", and that the sentence for each refusal would be consecutive, not only to the penitentiary term imposed after his trial, but that each contempt sentence would be consecutive.

Case then admitted that he knew Worley and had known Nancy Mitchell, and testified to events on the evening of December 31, 1981 and January 1, 1982, including going to the Juggernaut Game Room at 2:30 p.m. on January 1 and staying there six-to-eight hours. He refused to answer (on the basis of privilege against self-incrimination) when asked, "Where did you go when you

left?" and "Who did you leave the Juggernaut with?" These were the first two findings of contempt.

After refusing to testify about the night Nancy Mitchell died and being held in contempt the third time, there were various proceedings out of the presence of the jury, which included a speech to the court by attorney Mitchell about Case's constitutional rights. After Case conferred with attorney Mitchell, Case began using a standard response as to why he refused to answer. Most of the responses went to procedural matters but the essence was clear: "I refuse to testify in this case . . . regarding the Nancy Mitchell homicide."

The other seven findings of contempt arose in the context of Case being asked about his testimony at his trial and his refusal to answer.

■ Case and the Attorney General agree that the ten refusals to answer, for which Case was held in contempt, should be viewed as one contempt because the questions were all directed to Nancy Mitchell's homicide, and Case refused to testify about the homicide. We agree; however the question was phrased, Case refused to testify about the homicide. We do not reach the point of considering whether there would have been more than one subject of inquiry and, thus, more than one contempt if Case had testified to some of the homicide events. Having refused to answer all questions concerning the homicide, there was but one subject of inquiry and one contempt. *State v. Urioste,* 95 N.M. 712, 625 P.2d 1229 (Ct.App.1980).

*Punishment*

■ In ordering Case to answer, the trial court informed Case that the punishment for a refusal would be a one-year prison sentence for each refusal. Case was sentenced to a one-year prison term for each of the ten refusals, to be served consecutively. Case contends the trial court lacked authority to impose more than six months. We agree. Sentences exceeding six months for criminal contempt may not

be imposed absent a jury trial or waiver thereof. *Cheff v. Schnackenberg,* 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). *See Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), and cases therein cited. Here there was neither a jury trial nor waiver.

*Right to Counsel*

The trial court knew that Case was represented by attorney Mitchell when Case was called as a witness, and knew that Mitchell was en route to the courthouse. The trial court refused to wait for Mitchell on the basis that Mitchell was "not part of this trial."

When Mitchell arrived in the courtroom, the trial court informed Mitchell of what had occurred and that sentence had been imposed for two contempts. Mitchell then argued:

(a) "[I]t is a sad day in American jurisprudence when a young man . . . is brought into this courtroom without benefit of counsel when the Court knows full well who his attorney is, and that I am desperately trying to get here . . . ."

(b) Case desires to take the "Fifth Amendment".

(c) Case is refusing to testify for numerous reasons.

(d) No punishment given by the court is valid because Case was denied counsel.

(e) Case is entitled "to all of the constitutional rights that any individual is given in this country."

(f) A demand for a hearing on this matter.

(g) A request to present evidence.

(h) A claim as of right to "a judge other than this one".

Subsequently, in a written motion Mitchell elaborated as follows:

(a) A hearing was requested to determine whether the grant of immunity was proper.

(b) A hearing was requested to determine whether Case had a right to counsel.

(c) A hearing was requested to determine whether, even under a grant of immunity, Case had a right "to refuse to testify due to the Fifth Amendment and duress."

(d) A hearing was requested to determine "any other issues that *may* be involved in the contempt of Carl Case[.]" (Emphasis added.)

(e) Case demands his right to jury trial.

We have itemized Mitchell's contentions because they make clear his view that no summary contempt adjudication could take place without a trial of Case, a trial which could involve every aspect of a contempt adjudication, both substantively and procedurally. Yet, such an unlimited inquiry would be a satellite trial within the proceedings against Worley. These contentions are to be viewed in relationship to the basis for summary contempt proceedings: "[I]ntentional obstructions of court proceedings that literally disrupted the progress of the trial. * * *" *United States v. Wilson.* Mitchell's view was that such disruptions cannot be dealt with except as ordinary and traditional criminal proceedings.

The trial court's view was that Case, as a witness, had no right to counsel and that Mitchell, as attorney for a witness, had no standing to be heard in the trial of Worley. The trial court overruled the various contentions of Mitchell, but did allow Mitchell to confer with Case. The trial court also warned Mitchell "if you say anything in this case while * * * [Case] is testifying, the Court will consider that as an obstruction * * * and a disruption of this trial", would hold Mitchell in contempt and assess fines, progressively larger for each disruption.

Before Mitchell conferred with Case, the trial court informed counsel, including Mitchell, that if Case "decides to testify and tell the truth", Case's sentences for the murder and criminal sexual penetration convictions would be changed to run concurrently instead of consecutively. Mitchell asked if he could present evidence regard-

ing duress; the trial court said "No." Upon further inquiry, the trial court stated that if Case testified, truthfully, the prior contempt rulings would be "purged". Mitchell objected that the entire procedure was a denial of Case's constitutional rights; Case said, "I ain't taking it." Thereafter, the subsequent contempts, for refusing to testify, occurred.

In discussing summary contempt procedures in *Matter of Klecan,* the New Mexico Supreme Court quoted approvingly from *Cooke v. United States,* 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925). *Cooke* also stated:

> To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary. It has always been so in the courts of the common law and the punishment imposed is due process of law. Such a case had great consideration in the decision of this Court in *Ex parte Terry,* 128 U.S. 289 [9 S.Ct. 77, 32 L.Ed. 405]. It was there held that a court of the United States upon the commission of a contempt in open court might upon its own knowledge of the facts without further proof, without issue or trial, and without hearing an explanation of the motives of the offender, immediately proceed to determine whether the facts justified punishment and to inflict such punishment as was fitting under the law. [*Id.* 267 U.S. at 534–535, 45 S.Ct. at 394.]

*State v. Clark,* 56 N.M. 123, 241 P.2d 328 (1952), is in accord.

*In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), states:

> Except for a narrowly limited category of contempts, due process of law as explained in the *Cooke* case requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential. * * * [*Id.* 333 U.S. at 275, 68 S.Ct. at 508–509.]

*See State v. Diamond,* 94 N.M. 118, 607 P.2d 656 (Ct.App.1980).

A jury trial (or waiver thereof) is required for contempts if the actual punishment for contempt exceeds six months. *Taylor v. Hayes.* In proceedings requiring a jury trial, Case would have the right to counsel. *In re Oliver.* Thus, the issue of right to counsel reduces to a right to counsel where summary proceedings are appropriate and where the actual punishment would not exceed six months.

In this limited situation, *Cooke* and *Oliver* are to the effect that there is no right to counsel. Case asserts these cases are no longer applicable; he relies on *Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972), which held: "[T]hat absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial."

*Commonwealth v. Crawford,* 466 Pa. 269, 352 A.2d 52 (1976), held that *Argersinger* requires the right to counsel in summary contempt proceedings if the sentence involves imprisonment. *Pitts v. State,* 421 A.2d 901, 906 (Del.1980), held that "where there is no emergency such as conduct physically threatening to people and property in the courtroom and no other exigency unduly interfering with trial proceedings, the *better* policy * * * is to afford an indigent defendant the opportunity for court-appointed counsel." (Emphasis added.) *Skol-*

*nick v. State,* 180 Ind.App. 253, 388 N.E.2d 1156, 1164 (1979), applied *Oliver,* without mentioning *Argersinger,* holding: "The right to counsel does not attach when a trial judge is compelled to convict and punish summarily for direct criminal contempt." *Saunders v. State,* 319 So.2d 118, 125 (Fla. App.1975), held that the "broad statement" in *Argersinger* did not apply because *Argersinger* "did not involve a direct contempt during the course of a trial."

■ The competing considerations are set forth in the several opinions in *Commonwealth v. Crawford.* We agree with *Saunders v. State* and the dissents in *Commonwealth v. Crawford.* Criminal contempt is an offense *sui generis. Cheff v. Schnackenberg; Jencks v. Goforth,* 57 N.M. 627, 261 P.2d 655 (1953). The authority of a trial court to proceed summarily has been severely limited by the jury trial requirement if punishment is to exceed six months. Further, summary proceedings are limited to offenses in the presence of the court. Considering (1) the necessity for summary proceedings, (2) the limitations on punishment in summary proceedings, and (3) the fact that *Argersinger* did not involve contempt, we hold that the applicable law on the right of counsel is stated in *Cooke* and *Oliver.* Case had no right to counsel if the actual punishment for his contempt did not exceed six months.

### Defenses

Case characterizes this issue as a right to a hearing and a right to present a defense. *Oliver* distinguished between "defense" and "explanation" in holding that a contemner had neither a right to present a defense nor to give an explanation when the contempt proceeding was appropriately summary. The terms we use are "defense" and "allocution".

Attorney Mitchell sought a hearing in the trial court as to whether the grant of immunity to Case was proper and whether, even under a grant of immunity, Case continued to have a privilege of self-incrimination. Independently of the grant of immunity, attorney Mitchell claimed, without regard to Case's testimony at his trial, that Case retained a privilege against self-in-

crimination. Nothing in the appellate record supports these claims; further, there is no appellate claim as to these items. We identify them solely to eliminate them from consideration.

■ The "defense" claimed by Case is that of duress based on fear, presumably of retaliatory conduct if Case testified. The trial court refused to permit evidence of duress as a defense to Case's refusal to answer questions. Duress is not a defense to contempt by refusal to testify. *Piemonte v. United States,* 367 U.S. 556, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961), states in footnote 2:

> Neither before the Court of Appeals nor here was fear for himself or his family urged by Piemonte as a valid excuse from testifying. Nor would this be a legal excuse. Every citizen of course owes to his society the duty of giving testimony to aid in the enforcement of the law. See *Brown v. Walker,* 161 U.S. 591, 600 [16 S.Ct. 644, 648, 40 L.Ed. 819]. Lord Chancellor Hardwicke's pithy phrase cannot be too often recalled: "[T]he public has a right to every man's evidence." 12 Hansard's Debates 693; 8 Wigmore, Evidence (3d ed.), p. 64, § 2192.
>
> If two persons witness an offense—one being an innocent bystander and the other an accomplice who is thereafter imprisoned for his participation—the latter has no more right to keep silent than the former. The Government of course has an obligation to protect its citizens from harm. But fear of reprisal offers an immunized prisoner no more dispensation from testifying than it does any innocent bystander without a record. [*Id.* 367 U.S. at 559, 81 S.Ct. at 1722.]

*Compare State v. Sanchez.*

■ Case did, however, have a right to allocution before sentence was imposed. *Taylor v. Hayes* modifies *Cooke* and *Oliver* as to the right to be heard before imposition of sentence. Where, as here, allocution has been denied, the proper remedy is to vacate the sentence and, before reimposing sentence, afford Case a right of allocution. *Tomlinson v. State,* 98 N.M. 213, 647 P.2d 415 (1982); *compare Matter of Klecan.*

*Propriety of the Trial Court Adjudicating the Contempts*

■ Having held there was but one contempt, the question is whether the trial court could properly make the adjudication. It could not if the punishment imposed exceeded six months because of a right to jury trial in that situation. The question presented is whether the trial court could properly adjudicate the contempt if the sentence did not exceed six months in prison.

This claim is presented on the basis that the trial court's impartiality had been affected by the acts of Case. *See Matter of Avallone,* 91 N.M. 777, 581 P.2d 870 (1978). Case contends that a lack of impartiality is shown by the trial court proceeding in derogation of Case's right to counsel, by ordering attorney Mitchell "into silence" and by threatening Mitchell with contempt. Inasmuch as the trial court's view of the right to counsel was legally correct, the trial court's actions in denying attorney Mitchell an opportunity to totally distort summary contempt procedures does not show lack of impartiality or embroilment by the trial court. Case also contends that a lack of impartiality is shown by the trial court's refusal to permit evidence as to duress. This, too, is incorrect; duress was not a defense.

Another claim of lack of impartiality is "the personal animosity exhibited throughout the proceeding by the trial court's efforts to compel Mr. Case's testimony. * * *" The items involved are (1) the threat (and subsequent imposition) of one-year sentences for each refusal to testify; (2) the imposition of these sentences as consecutive sentences; (3) the offer to change Case's prison sentence from consecutive to concurrent; and (4) the offer to "purge" the contempts if Case did testify. These items do not show a lack of impartiality. Rather, these efforts of the trial court sought "to provide the recalcitrant witness with some incentive to testify." *United States v. Wilson.*

The trial court was not disqualified from adjudicating the contempt on the basis of lack of impartiality.

*Disposition*

■ The ten contempt convictions with a one-year sentence for each contempt cannot stand. The State suggests that *this Court* may remand with instructions (a) to resentence Case to imprisonment not exceeding six months on the basis of one contempt, or (b) to grant Case a jury trial if the sentence is to exceed six months. The State suggests *this Court* may make this choice. It cites *Cheff v. Schnackenberg,* 384 U.S. at 380, 86 S.Ct. at 1526: "Nothing we have said, however, restricts the power of a reviewing court, in appropriate circumstances, to revise sentences in contempt cases tried with or without juries."

The State fails to recognize that *this Court* lacks authority to modify a sentence. *State v. Sanchez.*

Even if *this Court* had authority to modify a sentence, the choice of how to proceed in connection with this contempt matter would not be a choice for this Court. Rather, the choice is for the State to make. *See Taylor v. Hayes.* The State has not made the choice.

The convictions and sentences for ten contempts are vacated. The cause is remanded to the trial court, with the following instructions:

(a) The State is to choose how to proceed in the trial court.

(b) The State may choose that Case be sentenced for one contempt with any imprisonment imposed not to exceed six months. Case has a right of allocution before imposition of such sentence.

(c) The State may choose to proceed by jury trial. Under this choice, Case has a right to counsel, and any sentence imposed upon conviction may exceed six months imprisonment.

IT IS SO ORDERED.

LOPEZ and DONNELLY, JJ., concur.