721 P.2d 1294

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Roch Y. POTHIER,
Defendant-Appellant.**

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**James Edward CADE,
Defendant-Appellant.**

**Nos. 16,008, 16,009.**

Supreme Court of New Mexico.

June 23, 1986.

Janet Clow, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for defendants-appellants.

Paul Bardacke, Atty. Gen., Patricia Frieder, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

RIORDAN, Chief Justice.

Roch Pothier and James Cade (defendants) were charged with first degree murder. Each defendant gave extra judicial statements to the police, exculpating themselves and inculpating each other. Each defendant was called as a witness in the separate trial of the other. Each defendant claimed the fifth amendment privilege against self-incrimination and was granted use immunity. Despite the grant of immunity, each defendant refused to testify and was held in direct contempt of court. The district judge declared mistrials in each trial and gave the state the option of agreeing to a six-month sentence or having a jury trial on the contempt issue where a sentence of more than six months could be imposed. The state chose the jury trial. In separate trials each defendant was found guilty of criminal contempt and sentenced to life imprisonment. Defendants appeal. Because of the parallel facts and identical issues, the appeals are joined.

The issues defendants raise on appeal are:

A. Defendants were denied a preliminary hearing;

B. The evidence was insufficient;

C. Defendants were denied the use of a duress defense;

D. Proper jury instructions were not given;

E. Allocution was denied;

F. The district judge should have been disqualified; and

G. The sentence given to each defendant was illegal or an abuse of the district court discretion.

We uphold the district court on all issues except the sentences and remand for resentencing.

**Contempt**

■ Contempts are frequently neither completely civil nor strictly criminal. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911). In either event, a defendant has disobeyed an order from the court and is therefore punished. If it is for civil contempt, the punishment is remedial to coerce defendant to perform the act ordered by the court. But if it is for criminal contempt, the sentence is punitive; to vindicate the authority of the court. *State v. Greenwood*, 63 N.M. 156, 315 P.2d 223 (1957). Imprisonment for *civil contempt* is ordered where a defendant has refused to do an affirmative act required by the provision of an order, which either in form or substance was mandatory in its character, such as an order by the court to answer certain questions. Imprisonment in such cases is not inflicted as punishment, but instead is intended to coerce a defendant to answer questions. The decree in such cases is that a defendant stand committed unless and until he performs the affirmative act required by the court's order. Upon imprisonment, a defendant "carries the keys of his prison in his own pocket." *State v. Our Chapel of Memories of New Mexico, Inc.*, 74 N.M. 201, 205, 392 P.2d 347, 350 (1964). He can end the sentence and discharge himself of contempt at any moment by doing what he has previously refused to do. Since the purpose is to make the defendant comply, the courts discretion is exercised in considering the character and the degree of harm threatened by continued contumacy and whether or not the contemplated sanctions will bring about a compliance with the court's order.

■ On the other hand, *criminal contempt* is punishment that vindicates the

authority of the court. *Greenwood.* In imposing punishment for a criminal contempt, the seriousness of the consequences of the contumacious behavior, the public interest in enforcing a termination of a defendant's defiance and the importance of deterring future defiance are all matters to be considered by the trial court. The trial court is accorded great discretion. *Our Chapel of Memories of New Mexico.*

Most contempt cases have elements of both civil and criminal contempt. The instant case does not try defendants for murder, only for criminal contempt. They need not escape prosecution for murder. They could be held in civil contempt and confined until they comply with the court's order to testify, and also punished for criminal contempt for their defiance to the court.

This appeal involves only the criminal contempt issues.

## A. Preliminary Hearing

There are two types of criminal contempt. *Direct contempt* is contemptuous conduct in the presence of the court, and *indirect contempt* is an act committed outside the presence of the court. *State v. Stout,* 100 N.M. 472, 672 P.2d 645 (1983); *In re Klecan,* 93 N.M. 637, 603 P.2d 1094 (1979); *Roybal v. Martinez,* 92 N.M. 630, 593 P.2d 71 (Ct.App.1979).

■ Defendants here were not given a preliminary hearing. A preliminary hearing is held primarily to show the reasonable probability that the crime or act was committed by the accused. *State v. Garcia,* 79 N.M. 367, 443 P.2d 860 (1968); *State v. Masters,* 99 N.M. 58, 653 P.2d 889 (Ct.App.1982); *see also State v. Vallejos,* 93 N.M. 387, 600 P.2d 839 (Ct.App.1979). The trial judge reasoned that a preliminary hearing was unnecessary in direct criminal contempt of court cases because in essense it was held when the contempt occurred. However, defendants contend that a preliminary hearing was required. They cite N.M. Const. art. II, Section 14, which states that no person shall be held for a capital, felonious or infamous crime without having had a preliminary examination before the examining official. However, contempt of

court is not a capital, felonious or infamous crime. *See* NMSA 1978, § 34-1-2 (Repl. Pamp.1981). *Our Chapel of Memories of New Mexico* states: "Since actions in contempt are sui generis, we are not forced into technicalities of strict application of either criminal or civil law." 74 N.M. at 204, 392 P.2d at 349 (citation omitted); *see also Seven Rivers Farm, Inc. v. Reynolds,* 84 N.M. 789, 508 P.2d 1276 (1973). "The right to a preliminary hearing is not discretionary with the judge. A person is either entitled to it as a matter of law, or not at all." *Williams v. Sanders,* 80 N.M. 619, 620, 459 P.2d 145, 146 (1969). *Williams* held that a preliminary hearing in juvenile court is not imperative to the fact-finding process to meet the requirements of due process and fair treatment. This is accomplished by a jury trial. Similar to contempt, there is no statute or constitutional provision which requires a preliminary hearing for juveniles. *See Peyton v. Nord,* 78 N.M. 717, 437 P.2d 716 (1968). The proceeding in juvenile court is not strictly criminal in nature and the fact that a jury trial is required does not make it criminal. *Williams.* The juvenile code is analagous to contempt in that it is not included in the criminal code and due process and fair treatment are accomplished by the jury trial requirement.

We said in *International Minerals and Chemical Corp. v. Local 177, United Stone and Allied Products Workers,* 74 N.M. 195, 392 P.2d 343 (1964), that wilful disobedience of a court's order is punishable by traditional criminal proceedings, referred to as quasi-criminal. The rights of the accused must be preserved and safeguarded. *International* involved the rights of the contemner not to testify against himself and that he is presumed innocent until found guilty. These are basic constitutional rights that would be protected in a jury trial.

However, the United States Supreme Court stated in *Bloom v. Illinois,* 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 (1968), that "[c]riminal contempt is a crime in the ordinary sense; it is a violation of the law...." The Court went on to say

"[d]ue process of law, therefore, in the prosecution of contempt, *except of that committed in open court,* requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense explanation." *Id.* at 205, 88 S.Ct. at 1484 (quoting *Cooke v. U.S.,* 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925)) (emphasis added). In *Bloom* a contemner was found guilty in a bench trial and sentenced to twenty-four months, but the Supreme Court reversed, stating the contemner was entitled to a jury trial.

*State v. New Mexican Printing Co.,* 25 N.M. 102, 177 P.751 (1918) stated that the constructive or indirect contempt involved was a criminal proceeding governed by the rules of criminal law. However, that case is distinguishable from the instant case in that it involved an *indirect* contempt.

Contempt committed in open court may be punished summarily. *In re Cherryhomes,* 103 N.M. 771, 714 P.2d 188 (Ct.App. 1985), *cert. denied,* 103 N.M. 740, 713 P.2d 566 (1986); *State v. Diamond,* 94 N.M. 118, 607 P.2d 656 (Ct.App.1980). Defendants' contempts were committed in open court and on record. The trial judge gave the state the option of summary punishment of six months or a trial by jury. Thus, the defendants' rights were protected by being given a jury trial.

Defendants cite *In re Stout,* 102 N.M. 159, 692 P.2d 545 (Ct.App.1984), which states that the rules of criminal procedure apply to a criminal contempt hearing (*i.e.,* the jury trial itself). *Stout* requires proof beyond a reasonable doubt for guilt in criminal contempt. *Stout* cites *Lindsey v. Martinez,* 90 N.M. 737, 568 P.2d 263 (Ct. App.1977) which also states that the hearing and sentence were governed by the rules of criminal procedure. Again, this applies to the rules of criminal procedure used within the jury trial itself.

Defendants argue that the New Mexico Constitution in art. II, Section 14, does allow one exception to the preliminary hearing requirement which is for military when in actual service in time of war or public danger. They reason that since the Constitution states an exception, all other exceptions are excluded. However, the exception applies to capital, felonious or infamous crime. N.M. Const. art. II, § 14. Contempt is not a capital, felonious or infamous crime. NMSA 1978, § 34–1–2. Thus, the preliminary hearing requirement would not apply in this case as it did not apply in *Williams.* Thus, a preliminary hearing in criminal contempt is unnecessary.

## B. Evidence

■ The district judge read portions of the transcript of the original contempt occurrence into the record. Defendants argue that although their own statements are admissible under NMSA 1978, Evid.Rule 801(d)(2)(A) (Repl.Pamp.1983), as an admission by a party opponent, the statements of the district judge are hearsay and inadmissible. *In re Nelson,* 79 N.M. 779, 450 P.2d 188 (1969) states that a transcript was "certainly admissible as an admission by a party against his interest and therefore competent evidence." *Id.* at 781, 450 P.2d at 190 (citation omitted). No distinction is made as to the other party (questioner, lawyer, judge) in the transcript. In this case, the transcript was made in open court and the proceedings were "of record." The accuracy of the transcript is not in question. Its trustworthiness is therefore accepted. This is the best proof available as to exactly how the contempt occurred. It is offered to prove the essential facts and defendants had notice of the intended use of the transcript. These factors would make it acceptable evidence under NMSA 1978, Evid.Rule 803(24) (Repl.Pamp.1983) as an "other exception."

Defendants argue that they were not given an opportunity to confront or cross-examine the district judge as a witness against them. The transcript is the evidence presented, not the testimony of the district judge. Defendants do not question the accuracy of the transcript. It is the most accurate proof available; thus the testimony of the district judge is unnecessary. However, nothing prevented defend-

ants from calling as a witness the judge before whom the contempt was committed.

■ Defendants also object to the reading of the transcript by the district judge. The judge asked both parties to agree on an edited tape or transcript and informed them that if they did not agree, he would read a selected portion. Neither party gave the judge an alternate version of the transcript, though defendants did ask that a tape of the incident be played in its entirety. The judge denied this request because of the prejudicial value of many of the statements made or that it was not relevant to the issue of contempt. *See State v. Case,* 103 N.M. 574, 711 P.2d 19 (Ct.App.1985) (*Case* III).[1] The portion read into evidence consisted of the district judge asking defendants (in separate trials) if it was correct that he refused to testify because of the protection granted by the fifth amendment. Each defendant replied that was correct. Each defendant was given use immunity and still refused to testify. Each defendant was ordered to testify and again refused. The judge read only the portions that were previously given to the attorneys. The judge did not make any comment to the jury, he simply stated that he was going to read portions of the transcript of the trial in which the contempt occurred. The analogy used in *State v. Caputo,* 94 N.M. 190, 608 P.2d 166 (Ct.App. 1980) would not apply in this case. *Caputo* involved the questioning of a witness by a judge that may have prejudiced the jury. The court there stated that the judge had the right to impartially examine a witness, but not to voice an opinion that may impress the minds of the jury. Here, there is no suggestion of opinion by the district judge that may have influenced the jury. It is instead suggested that the position of the judge in and of itself may have been an influence. In this case this is not correct. It is irrelevant who reads the transcript into the record. The district judge made no other comments. His reading of the transcript was proper.

## C. Duress defense.

■ Duress is a defense in criminal cases if a defendant reasonably feared death or *immediate* and *serious* bodily harm which could be avoided only by committing the criminal act charged. *See* NMSA 1978, UJI Crim. 41.20 (Repl.Pamp. 1982); *Esquibel v. State,* 91 N.M. 498, 576 P.2d 1129 (1978); and *State v. Lee,* 78 N.M. 421, 432 P.2d 265 (Ct.App.1967). Defendants' claim of duress is based upon a fear of reprisals in both the county jail and the New Mexico State Penitentiary if they testified. However, this is not a threat of immediate and serious bodily harm.

> "The duress must be present, imminent and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily injury * * * * The defense of duress is not established by proof that the defendant had been threatened with violence at some prior time, if he was not under any personal constraint at the time of the actual commission of the crime charged."

*Lee* at 423, 432 P.2d at 267 (citations omitted). In *United States v. Patrick,* 542 F.2d 381 (7th Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977) the defendant and his family were actually threatened if he testified before a grand jury. However, the court found that the immediacy element was not established and duress was not allowed as a defense. The court stated that "a veiled threat of future unspecified harm ... is not the equivalent of an immediate threat of death or severe bodily injury." 542 F.2d at 388 (citations omitted). Here, defendants did not establish that they were in present, imminent and impending danger and the duress defense is not allowed.

In *State v. Case,* 100 N.M. 173, 667 P.2d 978 (Ct.App.1983) (*Case* II), the Court of Appeals stated that duress is not a defense to contempt of court by refusal to testify. *Case* II, cites *Piemonte v. United States,* 367 U.S. 556, 81 S.Ct. 1720, 6 L.Ed.2d 1020

---

1. *State v. Case,* 100 N.M. 714, 676 P.2d 714 (1984) (*Case* I) is not cited in this opinion. For clarity only this cite is known as *Case* I; *State v. Case,* 100 N.M. 173, 667 P.2d 978 (Ct.App.1983) as *Case* II; *State v. Case,* 103 N.M. 574, 711 P.2d 19 (Ct.App.1985) as *Case* III; and *Case v. State,* 103 N.M. 501, 709 P.2d 670 (1985) as *Case* IV.

(1961) in which the facts are similar to those in *Case* II and in this case. Piemonte refused to testify in fear for himself and his family. He was given immunity, but still refused to testify. The *Piemonte* court stated "[w]e find no merit in an argument which is contradicted by petitioner's own assertion * * * that he refused to testify solely because of fear." *Id.* at 560–61, 81 S.Ct. at 1723. "Nor would [duress] be a legal excuse. Every citizen of course owes to his society the duty of giving testimony to aid in the enforcement of the law." *Id.* at 559, n. 2, 81 S.Ct. at 1722, n. 2.

The state has a legitimate interest in compelling defendants to testify as required by the rational relation standard established by the United States Supreme Court. *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Thus, defendants were not denied equal protection.

Defendants also argue that because of the duress, they did not have the required intent for the contempt. However, regardless of the motive for the refusal to testify, as long as it was done with the awareness it was wrongful, the degree of intent necessary for a conviction was established. *Patrick,* 542 F.2d at 389. The evidence supports the jury's decision that defendants intentionally failed to testify.

### D. Jury instructions.

■ Defendants argue that the trial court did not properly instruct the jury on the elements of contempt. "If error is to be claimed concerning a court's failure to give a requested instruction to a jury, such instruction must be a proper statement of the law." *State v. Wilson,* 85 N.M. 552, 555, 514 P.2d 603, 606 (1973) (quoting *State v. Williams,* 76 N.M. 578, 417 P.2d 62 (1966)). The refusal to answer questions in the presence of the court literally disrupts the progress of the trial and the orderly administration of justice. *Case* I, 100 N.M. at 174, 667 P.2d at 979. Defendants requested the following be included as a necessary element of contempt in the instruction given: "[t]he defendant's refusal to answer such questions disrupted the order

and decorum of the court." Refusal to testify is established as contempt and defined by case law. *See United States v. Wilson,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975); *Case* I, 100 N.M. at 174, 667 P.2d at 979. Thus, the element for jury consideration is whether defendants did or did not refuse to answer questions in the presence of the court. The jury instruction was properly refused.

■ Defendants also requested an instruction on the validity of the immunity order. They point out that perjury is specifically excepted from the immunity order. Since each defendant had given statements exculpating himself and inculpating the other, defendants argue that the state was compelling perjury in at least one instance and defendants had the right to refuse to testify by protection of the U.S. Const. amend. V. However, the validity of the immunity order is a question of law for the court, not one of fact for the jury. This argument has no merit.

Before a witness testifies, he is required to take an oath that he will testify truthfully. NMSA 1978, Evid.R. 603 (Repl.Pamp. 1983). Every witness is obligated to testify truthfully regardless of what condition he comes to the stand. *State v. Boeglin,* 100 N.M. 470, 672 P.2d 643 (1983). The immunity order stating that the defendant must testify truthfully, was a correct statement of the law.

### E. Allocution.

Defendants argue that they were denied their right to allocution. NMSA 1978, Section 31–18–15.1(A) (Repl.Pamp.1981) states that "[t]he court shall hold a sentencing hearing to determine if mitigating or aggravating circumstances exist * * *." Thus, the district judge must give a defendant an opportunity to speak before sentence is rendered. *Tomlinson v. State,* 98 N.M. 213, 647 P.2d 415 (1982). The tapes of the trial indicate that the district judge gave defendants this opportunity, which their attorneys used. Defendants argument has no merit.

**F. Disqualification of district judge.**

■ These proceedings were in direct criminal contempt of court. NMSA 1978, Section 38–3–9 (Cum.Supp.1985) does not apply in direct contempt cases. According to NMSA 1978, Crim.P.Rule 34.1 (Repl. Pamp.1985), defendants had ten days after their arraignment to file an election to excuse the district judge. The facts are clear that the filings were untimely and the district court's refusal to accept the disqualification was not error.

**G. Sentence.**

■ Defendants raise several points under this issue. We address the question of whether a life sentence for contempt of court is illegal and an abuse of discretion.

Defendants were convicted pursuant to NMSA 1978, Section 34–1–2 (Repl.Pamp. 1981), which authorizes the court "to punish contempts by reprimand, arrest, fine or imprisonment * * *." In *State v. Greenwood*, 63 N.M. 156, 162, 315 P.2d 223, 227 (1957) this Court stated:

[T]he power of the courts to punish for contempt is not absolute, exclusive and free of all legislative regulation * * *. But, while the legislature may provide rules of procedure which are reasonable regulations of the contempt power it may not, either by enacting procedural rules or by limiting the penalty unduly, substantially impair or destroy the implied power of the court to punish for contempt.

We stated previously that contempt is neither wholly civil nor completely criminal. It is not governed by strict application of the criminal code. In light of the fact that there is no constitutional or statutory limit on a sentence of criminal contempt of court, the only limit is the district court's discretion. *Bloom*, 391 U.S. 196, 197, 88 S.Ct. 1479, 1480; *Case v. State*, 103 N.M. 501, 709 P.2d 670 (1985) (*Case* IV).

Though the district court is accorded great discretion, it should not exercise more than the least possible power adequate to the end proposed. *United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). The end proposed in criminal contempt proceedings is to vindicate the authority and dignity of the court.

In imposing punishment for criminal contempt, the court must look at:
1. The seriousness of the consequences of the contempt.
2. The public interest in enforcing a termination of defendant's defiance.
3. The importance of deterring future defiance.

*Case* IV, 103 N.M. at 502, 709 P.2d at 672; *Our Chapel of Memories of New Mexico*, 74 N.M. at 205, 392 P.2d at 349 (1964).

The situation presented here troubles this Court in that defendants are clearly manipulating and abusing the judicial system by not testifying in the face of a lawful order to do so. This behavior is clearly punishable as criminal contempt. As we said previously, if defendants were held in civil contempt, they would determine the length of their own sentence. However, civil contempt is not at issue here. The purpose of this criminal contempt proceeding is not to make defendants testify. They are being punished to vindicate the authority and dignity of the court. The public interest and the importance of deterring future defiance is very important. However, to uphold the dignity of the court, we believe life imprisonment is clearly excessive and against all reason. *See State v. Hargrove*, 81 N.M. 145, 464 P.2d 564 (Ct.App.1970). Defendants have been sentenced to life imprisonment in this criminal contempt proceeding and in theory, nothing they could do in the future will affect that sentence.

Deterring future defiances such as this is very important. Thus, punishment is necessary, but how much punishment is necessary?

We must first look at what New Mexico courts have previously done. The Court of Appeals upheld the sentence of 180 days of a contemner in *State v. Sanchez*, 89 N.M. 673, 556 P.2d 359 (Ct.App.1976). The contemner refused to testify in a first degree

murder trial and the defendant was subsequently convicted of manslaughter. In *State v. Romero*, 96 N.M. 795, 635 P.2d 998 (Ct.App.1981), the defendant was sentenced to ninety days after refusing to testify, granted use immunity and still refused to testify. Other New Mexico cases have upheld similar punishment. *See, e.g., Seven Rivers Farm, Inc. v. Reynolds*, 84 N.M. 789, 508 P.2d 1276 (1973) (indirect contempt—fined $1,000); *State v. Our Chapel of Memories of New Mexico*, 74 N.M. 201, 392 P.2d 347 (1964) (direct contempt—six months to two years suspended, fined $1,000 to $10,000 mostly suspended); *State v. Greenwood*, 63 N.M. 156, 315 P.2d 223 (1957) (indirect contempt—six months suspended, fined $750); *Rhodes v. State*, 58 N.M. 579, 273 P.2d 852 (1954), (indirect contempt—10 days, fine $250); *State v. Augustus*, 97 N.M. 100, 637 P.2d 50 (Ct. App.), *cert. denied*, 97 N.M. 621, 642 P.2d 607 (1981) (indirect contempt—90 days). In *Case* IV, a ten year sentence was overturned by this Court as an abuse of discretion. We stated that the ten year sentence for one count of contempt was "excessive under the circumstances." *Case* IV, 103 N.M. at 503, 709 P.2d at 672.

In looking to other states, twenty-five have statutes that put a limit on the maximum amount of time that can be served and fine that can be imposed for contempt of court.[2] Three other states classify criminal contempt as a misdemeanor.[3] In no state is the statutory imprisonment longer than one year.

We therefore determine that compared to other New Mexico cases and other states, life imprisonment for criminal contempt of court is clearly an abuse of the district court's discretion. Thus, the district court is affirmed on all issues except the sentence. This case is remanded for resentencing.

IT IS SO ORDERED.

SOSA, Senior Justice and FEDERICI, J., concur.

| 2. | | |
|---|---|---|
| | Alaska | Alaska Stat. § 09.50.020 (1983) 6 months, $300 |
| | Arkansas | Ark.Stat.Ann. § 34–902 (1962) 10 days, $50 |
| | Connecticut | Conn.Gen.Stat. § 51–33 (1985) 6 months, $100 |
| | Idaho | Idaho Code § 7–610 (1979) 5 days, $500 |
| | Indiana | Ind.Code Ann. § 34-4-7-6 (Burns Cum. Supp.1985) 3 months, $500 |
| | Iowa | Iowa Code § 665.4(2) (1985) 6 months, $500 |
| | Kentucky | Ky.Rev.Stat. § 421.140 (1972) 24 hours, $30 |
| | Louisiana | La.Rev.Stat.Ann. § 13:4611 (Cum.Supp. 1986) 3 months, $500 |
| | Michigan | Mich.Comp.Laws Ann. § 600.1715 (West 1981 & Cum.Supp.1985) 30 days, $250 |
| | Minnesota | Minn.Stat. § 588.10 (1984) 6 months, $250 |
| | Mississippi | Miss.Code Ann. § 9-1-17 (1972) 30 days, $100 |
| | Montana | Mont.Code Ann. § 45-7-309 (1984) 6 months, $500 |
| | Nevada | Nev.Rev.Stat. Chap. 22.100 (1985) 25 days, $500 |
| | New York | N.Y.Jud.Law § 751 (Consol.1983 & Cum.Supp.1985) 30 days, $250 |
| | North Carolina | N.C.Gen.Stat. § 5A–12(a) (1981) 6 months, $500 |
| | North Dakota | N.D.Cent.Code § 12.1–10–01 (1985) 6 months, no fine limit |
| | Ohio | Ohio Rev.Code Ann. § 2705.05 (Page 1981) 10 days, $500 |
| | Oklahoma | Okla.Stat.Ann. tit. 21, § 566 (West Supp.1985) 6 months, $500 |
| | Oregon | Or.Rev.Stat. § 33.020 (Repl.Pamp.1985) 6 months, $300 |
| | South Dakota | S.D. Codified Laws Ann. § 21–34–6 (1979) 1 year, $5,000 |
| | Tennessee | Tenn.Code Ann. § 29–9–103 (Supp. 1985) 10 days, $50 |
| | Utah | Utah Code Ann. § 78–32–10 (Repl. Pamp.1977) 30 days, $200 |
| | Washington | Wash.Rev.Code § 7.20.020 (1985) 6 months, $300 |
| | Wisconsin | Wis.Stat.Ann. § 785.04 (West Cum. Supp.1985) 1 year, $5,000 |
| | Wyoming | Wyo.Stat. § 1–21–902 2 days, $20 |
| 3. | California | Cal.Penal Code § 166 (West 1970) |
| | Delaware | Del.Code Ann. tit. 11 § 1271 (Repl.Vol. 1979) |
| | Hawaii | Hawaii Rev.Stat. tit. 37 § 710–1077 (Supp.1984) |