607 P.2d 656
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Martin DIAMOND, Defendant-Appellant.**

**No. 4294.**

Court of Appeals of New Mexico.

Feb. 7, 1980.

Judd S. Conway, Asst. Dist. Atty., Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., John F. Kennedy, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

This appeal involves an attorney summarily held in contempt of court. The dispositive issue is whether the trial court could proceed summarily.

Diamond, the prosecutor in a criminal case, was excused from attendance in court because of a sudden illness in Diamond's family. Upon being excused, at approximately 11:00 a. m., the trial court instructed Diamond to "report in" by 1:00 p. m. of the same day. The trial court found Diamond in contempt of court and imposed a $75 fine on the following basis:

> IT APPEARING to the Court from the judge's own knowledge that Martin Diamond, Esquire, failed to appear in this Court and failed to get permission to remain away from Court on June 25, 1979, and that the failures were without justification or excuse; and that such attorney is thereby in direct contempt of Court: . . . .

*Roybal v. Martinez,* 92 N.M. 630, 593 P.2d 71 (Ct.App.1979) states:

> We have consistently recognized the two types of contempt: "direct"—contumacious words spoken or acts committed in

the presence of the court, and "indirect" or "constructive" contempt—similar misconduct, or some disobedient, scurrilous, or other defiant act engaged in out of the court's presence.

Diamond's nonappearance on the afternoon of June 25, 1979 delayed the trial; after the jury was selected and sworn, it was excused until the following day because the substitute prosecutor was not prepared to proceed. The tapes support the trial court's view that Diamond had not been excused from appearing that afternoon.

The briefs dispute whether Diamond's nonappearance was a direct or indirect contempt. Annot., 97 A.L.R.2d 431 at 457 (1964) states that there is disagreement in various jurisdictions as to whether an attorney's unexcused absence or tardiness is a direct or indirect contempt: "some holding that a failure to be present when required constitutes a direct contempt, others that it is an indirect contempt, and others that it falls in a third category, since the offense involves elements of both."

■ The words "direct" and "indirect," in describing the contempt involved, tend to confuse the reason for distinguishing the type of contempt. Depending on the conduct involved, a court may proceed summarily or may proceed only after notice and the opportunity to be heard. As explained by Justice Traynor, dissenting in *Chula v. Superior Court*, 57 Cal.2d 199, 18 Cal.Rptr. 507, 368 P.2d 107, 97 A.L.R.2d 421 (1962):

The classification of contempts as direct and indirect is merely a semantic device for differentiating contempts that can be adjudicated summarily from those that can be adjudicated only after adequate notice and hearing. When a contempt occurs within the "immediate view and presence of the court" the judge is fully informed of all facts necessary to adjudicate the guilt or innocence of the alleged contemner. When, however, the court is not so informed of such facts, notice and hearing are necessary to get them. . . .

In stating that "The failure of an attorney, *without valid excuse*, to be present . . . constitutes . . .

a direct contempt" . . . the majority opinion itself implicitly concedes that petitioner's contempt, if any, cannot be subject to summary punishment. The absence of a valid excuse is an indispensable element of the contempt. The trial judge could not discover the nature of the excuse or determine its validity without a hearing.

*In re Lamson*, 468 F.2d 551 (1st Cir. 1972) involved an attorney who was twelve minutes late in returning from a court recess because of "uncertain elevator service in a crowded building . . . ." The adjudication of contempt, in summary proceedings, was vacated. The opinion states:

We think not of this case, but of one where an attorney appears twelve minutes late, not because he ventured to use a foreseeably delinquent elevator, but because he became involved in an incident with a building security officer, or in an attempt to quell a demonstration, or in an effort to resuscitate a heart attack victim, or, even in a struggle to open an obstinate bathroom door. . . . The failure to be present in court at the appointed time is obvious to the court. Yet, while the absence, if it can be called "conduct", is in the presence of the court in a semantic sense, the presence of the offender is in the court's absence. As to the reasons for the presence elsewhere, they may be good ones, depending on witnesses—the security officer, some of the demonstrators or bystanders, the heart attack victim, or building maintenance personnel—or on other information which the tardy attorney could produce.

*Lamson*, supra, holds "that this kind of conduct is not within the actual presence of the court."

■ "Actual presence" need not be physical presence; there may be a constructive presence. See *Matter of Avallone*, 91 N.M. 777, 581 P.2d 870 (1978). That a contempt may be "direct" by "constructive presence" suggests that the word "presence" interjects another problem of semantics, and that the necessary basis for a direct contempt is not "presence" but the personal knowledge of the judge. See *Jessup v. Clark*, 490 F.2d 1068 (3rd Cir. 1973).

To the extent the "direct" contempt in this case requires "presence," the basis was insufficient because the absence of Diamond was not in the court's presence. To the extent the "direct" contempt in this case requires personal knowledge of the judge, the basis was insufficient because the judge lacked personal knowledge of what caused the absence. Compare *Rogers v. Superior Court*, 2 Ariz.App. 556, 410 P.2d 674 (1966). There being no "direct" contempt in this case, the trial court lacked authority to proceed summarily.

The propriety of summary procedure does not automatically follow from the fact that the contempt is "direct." Whether the trial court may proceed summarily depends on the conduct involved.

*In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) states:

Except for a narrowly limited category of contempts, due process of law . . . requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, *and where immediate punishment is essential to prevent "demoralization of the court's authority" before the public.* (Our emphasis.)

*Johnson v. Mississippi*, 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971) states: "Instant action may be necessary where the misbehavior is in the presence of the judge and is known to him, *and where immediate corrective steps are needed to restore order and maintain the dignity and authority of the court.*" (Our emphasis.)

In the *Matter of Klecan*, 603 P.2d 1094 (N.M.1979) involved a "direct" contempt. Nevertheless, summary proceedings were improper because Klecan's misbehavior "did not constitute violent disruption of the proceedings of the court or blatant disrespect for the judge." Diamond's nonappearance did not amount to the type of conduct which may be summarily punished.

On June 26, 1979, the day following Diamond's nonappearance, the trial court gave Diamond an opportunity to explain his nonappearance, but Diamond was never put on notice that in making his explanation he was defending against a contempt charge.

Diamond's conduct not being punishable in summary proceedings, and the requisite notice for a nonsummary proceeding not having been given, the adjudication of contempt was erroneous. The order holding Diamond in contempt is reversed and the contempt matter is remanded for further proceedings.

IT IS SO ORDERED.

HENDLEY and HERNANDEZ, JJ., concur.