672 P.2d 645

STATE of New Mexico, Petitioner,

v.

Michael L. STOUT, Respondent.

No. 14993.

Supreme Court of New Mexico.

Nov. 23, 1983.

Paul Bardacke, Atty. Gen., William Lazar, Asst. Atty. Gen., Santa Fe, for petitioner.

Rothstein, Bailey, Bennett & Daly, Robert R. Rothstein, Martha A. Daly, Santa Fe, for respondent.

## OPINION ON REHEARING

RIORDAN, Justice.

On rehearing, the previous Opinion in this case, filed October 31, 1983, is withdrawn and the following is substituted in its place.

Attorney Michael L. Stout (Stout) was cited for and held in contempt of court by District Judge James T. Martin in the Third Judicial District for failing to appear at a sentencing hearing which had been rescheduled at Stout's request. The Court of Appeals reversed the district court. We granted certiorari, and reverse and remand the case to the Court of Appeals.

The issue on appeal is whether a judge who initiates a contempt proceeding may preside over the contempt hearing.

Stout represented a criminal defendant, William A. McGhee (McGhee), in a trial before the district court. McGhee was convicted of first degree murder. On December 18, 1982, Stout requested a continuance of the setting for McGhee's sentencing. The district court granted the request and set McGhee's sentencing for January 5, 1983.

On January 3, 1983, Stout and his co-counsel began another trial in a different judicial district. Stout arranged for another lawyer to appear for him at McGhee's sentencing hearing, but failed to inform the district court that he would not appear. On January 5, 1983, Stout's "stand-in" lawyer appeared at McGhee's sentencing hearing and moved for a continuance because of Stout's absence. The district court suspended the sentencing hearing, contacted Stout by telephone, and ordered him to appear two days later to show cause why he should not be held in contempt. Stout appeared at the hearing on the order to show cause. At the conclusion of the hearing, the district court held Stout in contempt of court. At that time, Stout objected to the proceedings and stated on the record that he desired a full hearing with proper and adequate notice in which he could call witnesses, be represented by counsel of his choice, be able to cross-examine witnesses against him, be able to assert his Fifth Amendment rights, and be able to require proof against him beyond a reasonable doubt before a neutral and detached judge because the district court had become personally embroiled in the controversy.

On January 11, 1983, the district court entered its order which provided in part:

[That] attorney Stout not having offered any reason or excuse for not having advised the Court that he would not be present; and the Court having previously in this proceeding had hearings scheduled with witnesses subpoenaed on a motion filed by attorney Stout, at which time he failed to appear and failed to notify the Court, but arranged for another Public Defender to appear and to withdraw the motion, and on another occasion in this proceeding in which attorney Stout had filed an evidentiary motion which required the State to bring out-of-state witnesses to Las Cruces and at the time scheduled for such hearing attorney Stout requested that the witnesses be placed under the rule while other matters were heard, and having such witnesses sequestered most of the day then announced that he was unprepared and could not

proceed with the motion, and on such prior occasions, as well as his failure to appear at the sentencing hearing on January 5, 1983, indicating a lack of regard for attorney Stout's obligation to appear at hearings for which he is attorney of record, and for his lack of consideration for witnesses who are compelled to appear in Court, and based upon attorney Stout's prior actions in this proceeding, as well as his statements at the contempt hearing and lack of acceptable explanation for his failure to appear or to arrange to be excused, the Court finds that attorney Stout willfully disobeyed the Court's order in failing to appear at the time this matter was scheduled for sentencing hearing and that such action was contemptuous and for the purpose of delaying this proceeding.

IT IS THEREFORE ORDERED that attorney Michael L. Stout is hereby found in contempt of court and assessed a fine of Five Hundred Dollars ($500.00). * * *

On appeal, the Court of Appeals in an unpublished memorandum reversed the district court's order holding that the *per se* rule of a judge's disqualification originally enunciated in *Wollen v. State,* 86 N.M. 1, 518 P.2d 960 (1974), controlled this case.

We have previously held that a "direct" contempt is contemptuous conduct in the presence of the court, and that an "indirect" contempt is an act committed outside the presence of the court. *In re Klecan,* 93 N.M. 637, 603 P.2d 1094 (1979); *Roybal v. Martinez,* 92 N.M. 630, 593 P.2d 71 (Ct.App. 1979). Indirect contempt has been characterized generally by the act of disobeying or resisting process, intimidating a witness out of the presence of the court, or making any false or grossly inadequate report of any proceeding while the same is pending before the court. 17 Am.Jur.2d *Contempt* § 6 (1964). In addressing contempt and an attorney's failure to appear in court, Annot., 13 A.L.R.4th 122, 126–127 (1982) (footnotes omitted) provides in pertinent part:

It has been generally held that any absence of an attorney from a trial, hearing, or other proceeding which he is legal-

ly required to attend may be punished as a contempt of court, unless the attorney was unable to be present, or unaware that he was required to attend at the time in question, through no fault of his own.

\* \* \* \* \* \*

The courts are divided as to whether an attorney's absence, assuming it to be contemptuous, may be summarily punished by the court, or whether the attorney is entitled to formal notice of the charges against him and a hearing at which he may present evidence in his own defense. In general, it has been held that the courts are empowered to punish a contemptuous act summarily if it is 'direct'— that is, if it occurred within the presence of the court—but must follow formal procedures for contempts committed outside the court, termed 'indirect' or 'constructive.' Opinions have differed sharply, however, as to whether an attorney's absence at a legal proceeding should be characterized as a direct or indirect contempt, due in part to the semantical problem of whether it constitutes an offense committed in the presence of the court, where the attorney is supposed to be, or outside the court, where he is. Some jurisdictions have treated attorney absences as direct contempts, reasoning, for example, that the absence is an event immediately evident to the court, which thus has direct knowledge of the contempt and needs no hearing to support its judgment, while the attorney bears the burden of explaining his conduct. \* \* \* Others have adopted the indirect contempt approach, sometimes arguing that while the mere fact of the absence is before the court, the offense consists not merely in the absence itself but in the intent with which the attorney absents himself, which will often depend on events occurring outside the court.... A few states have decided that these offenses combine features of both direct and indirect contempts, have coined the term 'hybrid contempt' to describe this mixed form, and have prescribed some manner of proceeding intermediate be-

tween summary action and a full formal hearing. \* \* \* Finally, some jurisdictions appear to be divided within themselves, their ultimate resolutions of this issue not yet clear. \* \* \*

In the present case, both parties agree and we hold that Stout's failure to appear at McGhee's sentencing hearing, if contemptuous behavior at all, is *indirect* contempt. Furthermore, we recognize that some kind of formal notice and hearing was required because the contempt was not committed in the presence of the court. *State v. Diamond,* 94 N.M. 118, 607 P.2d 656 (Ct.App.1980). Nevertheless, compliance by a district court of a "formal notice and hearing" in a contempt proceeding is reviewed in terms of *substantive* compliance, as opposed to technical compliance of *specific* form or requirements. In the present case, we assume for the purpose of our discussion that the district court's oral order to Stout to appear in two days to show cause why he should not be held in contempt was in compliance with the requisite of a formal notice and hearing. However, we do not decide the sufficiency of notice issue because that issue may be one of those raised below in the Court of Appeals that was not decided.

In *Wollen,* we adopted the holding of the Court of Appeals of Michigan case of *People v. Kurz,* 35 Mich.App. 643, 660, 192 N.W.2d 594, 603 (1971) that:

[I]n the absence of circumstances necessitating immediate corrective action a person accused of contempt by a trial judge should be tried before a different judge, one not involved in the subject matter of the contempt or in the citation of the contemnor.

In reaching this conclusion, we rejected the sounder determination established by the United States Supreme Court in *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971), that only "when a judge becomes embroiled to the point where it is unlikely that he can maintain the calm detachment necessary for fair adjudication, then he should be prohibited from render-

ing the contempt judgment." *Wollen,* 86 N.M. at 2, 518 P.2d at 961.

A review of the rationale in *Wollen* necessitates its modification. The *per se* rule of disqualification erodes the power of the district judge to control the conduct of the proceedings before the court and to maintain the dignity and authority of the court. The referral of all cases of contempt to another district judge is wasteful of judicial resources, especially when, as in the present case, the district court is exercising its contempt power to insure efficient and economical administration of its docket. For example, a strict application of *Wollen* would preclude a judge from exercising his contempt power in domestic relations cases or other cases where the enforcement of a court order is the subject of the contempt. In addition, the *Wollen* rule without any justification creates the presumption that a district judge who cites a person for contempt cannot retain detached neutrality. Finally, a review of the facts of *Wollen,* ironically indicates a classic example of *direct* contempt case, which would have allowed for summary punishment, because the contemptuous act occurred in the presence of the court. In *Wollen,* the attorney left the courtroom after being warned by the district court that he would be held in contempt if he left.

■ Therefore, we overrule *Wollen* insofar as it holds that a person cited for contempt, whether it be direct or indirect contempt, is automatically entitled to a hearing on the contempt charge in front of a different judge pursuant to *People v. Kurz,* and we adopt the *Mayberry* rationale and hold that when a judge has become so embroiled in the controversy that he cannot fairly and objectively hear the case, or when he or one of his staff will necessarily be a witness in the proceeding, is the judge precluded from hearing the case. *See Matter of Klecan; In Matter of Avallone,* 91 N.M. 777, 581 P.2d 870 (1978).

■ In adopting this holding we fully recognize that an attorney charged with being absent or tardy in court may be also found in violation of NMSA 1978, Code of Professional Responsibility (Repl.Pamp. 1982), subjecting him to disciplinary action. *See The Florida Bar v. Ossinsky,* 255 So.2d 526 (Fla.1971).

The decision of the Court of Appeals is reversed. This matter is remanded to the Court of Appeals with instructions to reinstate the case on the calendar for appellate review.

IT IS SO ORDERED.

FEDERICI and STOWERS, JJ., concur.

PAYNE, C.J., specially concurring.

SOSA, Senior Justice, respectfully dissenting.

PAYNE, Chief Justice, specially concurring.

I concur with the majority opinion in holding that the trial judge could hear the contempt matter in issue in this case. I am not comfortable, however, in completely overruling the *Wollen v. State,* 86 N.M. 1, 518 P.2d 960 (1974), case and returning to the *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971), rationale in all contempt cases. I feel that neither the *Wollen* decision nor the *Mayberry* decision should be mutually exclusive.

The traditional method of basing disqualifications of judges to hear contempt matters upon distinctions of either "direct" or "indirect" classifications is also inadequate. The ability of a judge to fairly hear a contempt matter does not exclusively lie within the context of whether the alleged contumacious behavior occurred either in or out of the court's presence. Nor does it lie exclusively within the other definitional parameters that might be considered under direct or indirect classifications.

The critical issue to be resolved in such cases is the ability of the judge to be fair while also considering the need to maintain control of judicial proceedings. The *Mayberry* rule has the weakness of leaving to the judge the exclusive right to make the decision of fairness. Few mortals ever admit to unfairness even if they recognize

some bias in themselves. Extreme cases of bias or unfairness may be detected by an appellate court and thus give relief to a litigant who has been unfairly found to have been contumacious. The subtle cases present a more difficult problem.

I agree with the majority that the *Mayberry* rule should be the foundation for any rule dealing with contempt proceedings. I also agree with the majority that if a judge or the judge's staff is likely to be a witness in such proceedings, the judge should step aside. I would, however, more clearly define additional guidelines.

If the alleged contumacious actions or inactions occur during a proceeding where corrective measures must be taken to avoid disruption or delay, the trial judge should have the power to rule on such matters. Likewise, a judge must have the power to act to maintain control and decorum in the courtroom without having to refer the matter to another judge.

It is more difficult to draw a line that will allay the concerns expressed as the reason for the *Wollen* rule, that "the personalities and temperaments of judges vary considerably from judge to judge and what might 'embroil' one judge might not so affect another. The sound administration of justice should not allow for such an arbitrary standard." However, the sound administration of justice does not cry out for transferring every non-summary contempt proceeding to another judge with all the attendant problems of delay and disruption of calendars. Such would create an unnecessary burden upon other litigants who also are entitled to have their cases heard without undue delay.

An appeal from a determination of a judge in a non-summary contempt proceeding with review by an appellate court may be more efficient and just for the few cases wherein it is alleged that the trial judge should not have heard the matter.

If the contempt matter deals with an affront to the person of the judge as opposed to that of the process or the court, or if the alleged contempt deals with conversations or discussions between the contemnor and the judge other than normal judicial rulings or handling the business of the courts, I would not leave it to the judge to apply the *Mayberry* rule. The *per se* rule of *Wollen* should apply in such an instance.

SOSA, Senior Justice, dissenting.

I cannot concur with the majority opinion which overrules *Wollen v. State*, 86 N.M. 1, 518 P.2d 960 (1974). I believe that if *Wollen* is to be overruled, this Court should set standards for determining (1) when a judge is so embroiled in a controversy as to be disqualified from hearing the case, and (2) who is to decide whether the judge is so embroiled. Because the majority opinion does not address these two issues, I would hold that *Wollen* should not be overruled in the instant case. I would affirm the judgment of the Court of Appeals.

The facts in this case which are not set forth in the majority opinion may be found in the opinion of the Court of Appeals.

I respectfully dissent and adopt as my dissent the memorandum opinion, appended hereto *in toto*, written by Judge Thomas A. Donnelly and concurred in by Chief Judge Mary C. Walters and Judge William W. Bivins.

## APPENDIX

### No. 7035.

### Court of Appeals of New Mexico.
### MEMORANDUM OPINION

DONNELLY, Judge.

Appellant, a district public defender, appeals from an order finding him in contempt of court and imposing a fine. In the calendaring notice filed herein, we proposed summary reversal on three grounds, one of which we find to be determinative of the issues herein. The State has filed a timely memorandum in opposition to the calendaring notice.

We discuss the requirement that a judge who initiates a citation involving allegations of indirect contempt may not preside over the contempt proceedings.

Appellant, with co-counsel Gary Mitchell, participated as defense counsel in a criminal case, wherein the defendant William McGhee was charged with capital murder. Venue in the case was changed from Dona Ana to Lincoln County. Appellant, together with co-counsel, represented McGhee throughout the pretrial proceedings and trial. The jury returned a verdict finding McGhee guilty of first degree murder. Thereafter, the court conducted a capital felony sentencing procedure pursuant to NMSA 1978, § 31–20A–1, *et seq.*, to determine whether a sentence of death or life imprisonment should be imposed. Following jury deliberations, the jury was unable to unanimously agree upon whether a sentence of death or life imprisonment should be imposed.

Immediately after notice of the jury's inability to agree on a sentence, the trial judge indicated his intent to proceed immediately to sentence McGhee in accordance with NMSA 1978, § 31–20A–3. Appellant requested a continuance in order to be able to investigate the possibility of calling witnesses from out-of-state at the sentencing hearing. The trial judge granted appellant's request and set the hearing on sentencing for January 5, 1983, at 9:00 a.m. in Dona Ana County.

On the date set by the court for sentencing, neither appellant nor his co-counsel appeared for the court hearing. Both appellant and co-counsel were in Carlsbad representing other defendants in a capital murder trial which had commenced on January 3, 1983. During the last week of December 1982, appellant made arrangements with the District Public Defender's Office in Las Cruces, which office had participated in a limited role in the McGhee case, to have one of the attorneys cover the sentencing hearing in his place. Appellant did not communicate to the trial judge the fact that he would not appear.

Appellant spoke with Mario Esparza of the District Public Defender's Office in Las Cruces and informed him how he felt he should proceed in representing McGhee at the sentencing hearing. Appellant advised Esparza that it would be impossible for him to attend the sentencing hearing, and Esparza assured him he was ready to proceed.

On the morning of January 5, 1983, Esparza appeared at the sentencing hearing and requested a further continuance. The judge suspended the sentencing hearing to contact appellant in Carlsbad. Upon reaching appellant by telephone, the court orally ordered him to appear and show cause on January 7, 1983, why he should not be held in contempt of court and to then proceed in the McGhee sentencing hearing.

Appellant and Esparza met in chambers with the court and had a discussion off the record. Thereafter, on January 7, 1983, appellant, Esparza and two other public defenders appeared in open court before Judge Martin. Appellant gave an explanation of why he had failed to appear at the prior sentencing hearing. Appellant argues that he was not prepared for a formal contempt hearing and that he thought his previous explanation to the court had mooted the matter. At the hearing before the trial judge, appellant explained his conduct and apologized for inconveniencing the court. Following appellant's statements, the trial court found him in contempt for his failure to attend the sentencing hearing on January 5, 1983.

At the time the court announced its decision to hold appellant in contempt, appellant expressed surprise at the ruling, objected to the proceedings, and requested a full hearing with the due process protections embodied in the New Mexico Rules of Criminal Procedure and Rules of Evidence. Appellant also requested that the court voluntarily or involuntarily be recused from the proceedings.

Thereafter, on January 11, 1983, the trial court entered a written order finding appellant in contempt. The order signed by the court provided in part:

> [That] attorney Stout not having offered any reason or excuse for not having advised the Court that he would not be present; and *the Court having previously in this proceeding had hearings scheduled with witnesses subpoenaed on a motion*

*filed by attorney Stout, at which time he failed to appear and failed to notify the Court, but arranged for another Public Defender to appear* and to withdraw the motion, *and on another occasion in this proceeding in which attorney Stout had filed an evidentiary motion which required the State to bring out-of-state witnesses to Las Cruces and at the time scheduled for such hearing attorney Stout requested that the witnesses be placed under the rule while other matters were heard, and having such witnesses sequestered most of the day then announced that he was unprepared and could not proceed with the motion, and on such prior occasions, as well as his failure to appear at the sentencing hearing on January 5, 1983, indicating a lack of regard for attorney Stout's obligation to appear at hearings* for which he is attorney of record, and for his lack of consideration for witnesses who are compelled to appear in Court, *and based upon attorney Stout's prior actions in this proceeding, as well as his statements at the contempt hearing* and lack of acceptable explanation for his failure to appear or to arrange to be excused, the Court finds that attorney Stout willfully disobeyed the Court's order in failing to appear at the time this matter was scheduled for sentencing hearing *and that such action was contemptuous and for the purpose of delaying this proceeding.*

IT IS THEREFORE ORDERED that attorney Michael L. Stout is hereby found in contempt of court and assessed a fine of Five Hundred Dollars ($500.00). * * * [Emphasis added.]

Appellant filed a timely appeal from the above order.

Appellant contends that due process requirements necessitate that indirect, non-summary contempt proceedings accord an alleged contemnor the right, among others, to specific notice of the charge or charges against him. Appellant contends the order entered by the trial court indicates that in addition to the charge of contempt for his ·failure to appear at the sentencing hearing on January 5, 1983, the trial court considered other "activities" of appellant as basis for the finding of contempt. The court order finding appellant in contempt refers to other acts of appellant on "prior occasions, as well as his failure to appear at the sentencing hearing on January 5, 1983, indicating a lack of regard * * * for [his] obligation to appear at hearings."

We assume, but do not decide, that the trial court limited its contempt finding to the one instance of alleged contempt based on appellant's failure to appear at the January 5 sentencing hearing.

To the extent that appellant was held in contempt for his non-appearance on January 5, 1983, the alleged act of contempt constituted an indirect act as opposed to a direct act. In *State v. Diamond,* 94 N.M. 118, 607 P.2d 656 (Ct.App.1980), the court noted that contempt may be classified into two categories: (1) "direct" contempt, consisting of contumacious words spoken or acts committed in the presence of the court, and (2) "indirect" or "constructive" contempt, consisting of misconduct or some disobedient, scurrilous, or other defiant act engaged in out of the court's presence. The court in *Diamond* held that the failure of an attorney to appear for a scheduled hearing constitutes "indirect" contempt not appropriate for summary contempt proceedings.

In *Diamond,* the court quoted with approval from *In Re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948):

Except for a narrowly limited category of contempts, due process of law * * * requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the

eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent "demoralization of the court's authority" before the public.

As held in *Diamond,* in cases involving allegations of direct contempt, the court may proceed summarily, but, if the contempt is considered indirect, an alleged contemnor is entitled to more expansive procedures. *State v. Greenwood,* 63 N.M. 156, 315 P.2d 223 (1957); *see also* Annot., 97 A.L.R.2d 431 (1964). Indirect criminal proceedings are governed by rules of criminal law. *Lindsey v. Martinez,* 90 N.M. 737, 568 P.2d 263 (Ct.App.1977). Direct contempt as contrasted with conduct outside the court's presence, is generally considered to necessitate immediate action to maintain the dignity and authority of the court. *See Roybal v. Martinez,* 92 N.M. 630, 593 P.2d 71 (Ct. App.1979). *See also* Contempt of Court, Institute of Public Law, *published in* NMSA 1978, Crim.P.R., Reporter's Addendum to Rule 52 (Repl.Pamp.1980). The rationale for allowing summary procedure for direct contempt is that, when the contempt occurs in the presence of the court, the judge is fully aware of all facts necessary to determine the propriety of the questioned conduct and immediate action is required to preserve the court's authority. *See State v. Diamond, supra.*

Under the facts herein, the conduct of appellant did not constitute "direct" contempt rendering the matter appropriate for summary disposition. Appellant requested that the trial court recuse himself or be disqualified from hearing the allegations of contempt. In *Wollen v. State,* 86 N.M. 1, 518 P.2d 960 (1974), the Supreme Court adopted a standard rule that, in the absence of circumstances necessitating immediate corrective action, a person accused of contempt by a trial judge should be tried before a different judge. The court in *Wollen* quoted with approval from *People v. Kurz,* 35 Mich.App. 643, 660, 192 N.W.2d 594, 603 (1971), stating:

[I]n the absence of circumstances necessitating immediate corrective action (i.e., a summary contempt proceeding) a person accused of contempt by a trial judge should be tried before a different judge, one not involved in the subject matter of the contempt or in the citation of the contemnor.

We find the ruling in *Wollen* controlling in the instant case.

Because our ruling herein is grounded upon procedural and due process considerations, we do not address the merits of the alleged contempt. The cause is reversed and remanded to the district court for further action consistent with this opinion.

IT IS SO ORDERED.

WE CONCUR:

/s/ Mary C. Walters
MARY C. WALTERS, Chief Judge

/s/ William W. Bivins
WILLIAM W. BIVINS, Judge