This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff,

v.                                                    **NO. 34,466**

**ISAAC MARTINEZ and CARLA CASIAS**,

Defendants,

_____

**IN RE EMILIO CHAVEZ**,

Deputy District Attorney-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**John M. Paternoster, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Plaintiff

Long, Komer & Associates, P.A.
Nancy R. Long
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}** Deputy District Attorney Emilio Chavez (DDA Chavez), the prosecuting attorney in this case, appeals the district court's contempt citation. Because the manner in which DDA Chavez was held in contempt did not comport with due process, we reverse.

**BACKGROUND**

**{2}** The district court's contempt citation arose from DDA Chavez's conduct during the investigation into criminal charges against the named Defendants. The State sought to prosecute Defendants for allegedly robbing an employee of the Kit Carson Electrical Cooperative (the Cooperative) as she walked to her car in the Cooperative's parking lot.

**{3}** DDA Chavez intended to call witnesses Taro Brown, Jessica Machado, and Steven Hammer Jr., to testify at trial. At some point, in DDA Chavez's estimation, the witnesses became "uncooperative" and would only give pretrial statements if compelled to do so. DDA Chavez therefore sought and obtained three subpoenas duces tecum from the district court clerk. Each directed the subpoenaed witness to appear at the Taos County District Attorney's office on January 6, 2014, in order to give a statement "under the penalty of the law." DDA Chavez did not, however, serve the subpoenas on Defendants Martinez and Casias or their attorneys, as Rule 5-503(A)

NMRA expressly requires for all pretrial statements or depositions.

**{4}** Defendants' attorneys nonetheless learned of the subpoenas when the district court's electronic filing system notified counsel for one of the Defendants that DDA Chavez had filed the subpoena on the district court's docket. Both Defendants, and their attorneys appeared at the district attorney's office when the witnesses were due to give statements. DDA Chavez told defense counsel that they were not permitted to be present when the witnesses gave statements. A fracas ensued, after which DDA Chavez cancelled the statements and told the witnesses to leave.

**{5}** Defendants filed a motion for sanctions, complaining that the subpoenas issued to Taro Brown, Jessica Machado, and Steven Hammer Jr. did not comply with Rules 5-503 and 5-511(A)(1)(d) NMRA. To the extent that the subpoenas sought statements under Rule 5-503, Defendants argued that DDA Chavez failed to serve the subpoenas on Defendants and failed to confer with defense counsel in order to schedule the date and time the statements were to be taken, as Rule 5-503(D) commands. Defendants additionally argued that DDA Chavez violated the Rules of Criminal Procedure by attempting to prevent defense counsel from being present during the taking of the statements. Defendants asked the district court to prohibit the subpoenaed witnesses from testifying at trial, require the State to pay Defendants' attorney fees and costs associated with traveling to Taos to attend the interviews, and to impose any other

sanction the district court found to be warranted.

{6}    The district court held a hearing on Defendants' motion for sanctions on October 9, 2014. About twenty minutes into the hearing, the district court made its first mention that it was contemplating holding DDA Chavez in contempt of court for his *ex parte* subpoenas to trial witnesses. In response, counsel for Defendants[1] argued that it "wouldn't be right" to hold DDA Chavez in contempt without affording him "full due process rights" of a criminal defendant, including an order to show cause. Defendants argued that the district court should instead issue an order requiring DDA Chavez to pay their attorney fees and that such an order would be within the court's inherent power and therefore required neither an order to show cause nor the formalities of a criminal proceeding.

{7}    DDA Chavez limited his oral presentation in the hearing to addressing the propriety of an award of attorney fees and whether Defendants had proven that he had violated Rule 5-511 and Rule 5-503. As to the possibility that he might be held in contempt, DDA Chavez merely stated that the district court sent a sufficiently strong

---

[1]Since this appeal involves the prosecuting attorney as a contempt defendant, we note that this argument was offered by counsel for Defendants Martinez and Casias, not counsel for DDA Chavez. DDA Chavez did not obtain counsel until after the court issued its contempt order, and the only other person present on behalf of the State at the hearing on Defendants' motion for sanctions was DDA Chavez's supervisor.

4

message to the State with its earlier dismissal with prejudice of the indictments against Defendants and by its referral of DDA Chavez and his supervisor to the disciplinary board.[2]

{8} On December 26, 2014, the district court entered a written decision finding that DDA Chavez's subpoenas violated Rule 5-503 and holding him in contempt of court. As punishment, the district court ordered DDA Chavez to pay a "non-compensatory fine" of $999 to the district court or make a contribution of $700 to the New Mexico Access to Justice Commission "or a like program providing legal services . . . to low-income or disadvantaged litigants and individuals."

{9} The State now appeals the district court's contempt citation.

**DISCUSSION**

---

[2]The State has separately appealed the district court's dismissal with prejudice of the indictments against Defendants, which was a sanction for the State's earlier use of *ex parte* subpoenas to obtain cellular telephone records as part of its investigation. We certified that appeal, which remains pending, to our Supreme Court because it raises novel and important questions of law.

Also regarding the earlier subpoenas, separate disciplinary proceedings were initiated against DDA Chavez and his supervisor. Our Supreme Court recently issued a formal reprimand "as a result of [DDA Chavez]'s issuance of subpoenas without authority in his capacity as an Assistant District Attorney. The reprimand was deferred for one (1) year and will be automatically withdrawn if [DDA Chavez] commits no further violations of the Rules of Professional Conduct during the one-year deferral period. The Court will issue a written opinion at a later date." *See* State Bar Bulletin, Vol. 55, No. 18 at 14.

**{10}** In 2014, when the district court issued its contempt citation, Rule 5-112 NMRA (2014, amended 2015) provided that "[a]n attorney who willfully fails to observe the requirements of [the] [R]ules [of Criminal Procedure], including prescribed time limitations, may be held in contempt of court and subject to disciplinary action."[3] "Contempts of court are classified as civil or criminal. . . . The major factor in determining whether a contempt is civil or criminal is the purpose for which the power is exercised." *Concha v. Sanchez*, 2011-NMSC-031, ¶ 24, 150 N.M. 268, 258 P.3d 1060 (internal quotation marks and citation omitted). "Civil contempts are remedial and may use fines, imprisonment, or other sanctions as coercive measures to compel the contemnor to comply in the future with an order of the court." *Id.* ¶ 25. "Criminal contempt proceedings are instituted to punish completed acts of disobedience that have threatened the authority and dignity of the court and are appropriate even after the contemnor is no longer acting contemptuously." *Id.* ¶ 26.

---

[3]In 2015, this language was withdrawn and replaced with the current Rule 5-112 which sets out a detailed procedure for criminal contempts, requiring the district court to issue an order to show cause stating "(a) that the charge is criminal contempt of court; (b) the essential facts constituting the alleged contempt; and (c) the maximum punishment contemplated by the court." Rule 5-112(D)(1). Under the new rule the district court is required to appoint the district attorney to prosecute the criminal contempt, Rule 5-112(D)(2), and the district court is required to enter a judgment and sentence if the contempt defendant is found guilty. Rule 5-112(D)(4). Because this rule was not in effect when DDA Chavez was cited for contempt, we analyze the propriety of the district court's order under the rules that governed at the time.

**{11}**    Regarding criminal contempt, it "is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." *Bloom v. Ill.*, 391 U.S. 194, 201 (1968); *see State v. Pothier*, 1986-NMSC-039, ¶ 11, 104 N.M. 363, 721 P.2d 1294 (same). "A criminal contempt defendant is therefore entitled to due process protections of the criminal law, the specific nature of which will depend on whether the criminal contempt is categorized as direct or indirect." *Concha*, 2011-NMSC-031, ¶ 26. "A person who commits disruptive or defiant conduct in the midst of an ongoing court proceeding within the personal perception of the judge has committed an act of direct criminal contempt and may be punished summarily without further evidentiary proceedings." *Id.* ¶ 27. However, "[w]hen the judge has not personally witnessed the [contemnor]'s contemptuous behavior in the course of a court proceeding, the contempt is classified as indirect criminal contempt and must be resolved through more traditional due process procedures." *Id.* ¶ 28.

**{12}**    Our initial task is to ascertain the nature of the contempt citation in this case. The State argues that the district court's order awarding sanctions was an indirect criminal contempt, and we agree. First, DDA Chavez's *ex parte* subpoenas to trial witnesses had occurred in the past, and there was no indication that DDA Chavez would continue to issue similar subpoenas in this or other cases. The district court also

7

noted in its order that "any prejudice to [Defendants] by the State's abuse of power is far outweighed by the damage done to the justice process, the courts, and the bar[.]" Thus, we have no trouble discerning the primary purpose of the sanction from the district court's written order: to punish DDA Chavez for his violation of the rules governing subpoena practice in criminal proceedings. The district court's contempt citation was punitive in nature and therefore criminal.

{13}    Second, it is equally clear that the district court held DDA Chavez in indirect contempt. As the district court noted at the hearing on Defendants' motion for sanctions, DDA Chavez's conduct took place outside the courtroom; any resulting contempt citation would therefore be indirect criminal contempt. Under *Concha*, it follows that the district court was not permitted to hold DDA Chavez in contempt summarily; instead, the district court was required to resolve the issue "through more traditional due process procedures." *Id.* As our Supreme Court in *Concha* held,

> due process of law requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.

*Id.* ¶ 35 (quoting *State v. Diamond*, 1980-NMCA-026, ¶ 11, 94 N.M. 118, 607 P.2d 656) (alteration omitted).

{14}    Having concluded that DDA Chavez was held in indirect criminal contempt,

8

our next task is to ascertain whether he was afforded due process of law. We agree with the State that he was not. First, the district court failed to advise him that it was contemplating holding DDA Chavez in contempt before the hearing, the purpose of which was to address Defendants' motion for sanctions. The district court first mentioned the possibility of contempt more than twenty minutes into the hearing. As well, DDA Chavez could not have been put on notice by Defendants' motion for sanctions, because that motion had requested attorney fees and costs or "[a]ny other sanction or relief that the Court determines to be appropriate." Notably also, after the district court contemplated holding DDA Chavez in contempt, Defendants' attorney argued that a contempt citation would be inappropriate because the court had not afforded DDA Chavez due process of law. Defendants' boilerplate mention of "[a]ny other sanction or relief" in their written motion for sanctions did not give the district court license to hold DDA Chavez in contempt absent fair notice that it intended to do so and an accompanying opportunity for DDA Chavez to obtain the assistance of counsel and prepare a defense.

{15}    Previously, we rejected similarly informal contempt proceedings in *Diamond*. In that case, the prosecuting attorney was excused from court in the morning because of a sudden illness in his family. 1980-NMCA-026, ¶ 2. After being excused, the district court ordered the prosecuting attorney to return to court in the afternoon. *Id.*

When the prosecutor did not appear, which caused a scheduled jury trial to be delayed, the district court found the prosecutor in contempt of court and fined him $75. *Id.* ¶¶ 2, 4. Although the district court gave the prosecutor "an opportunity to explain" why he had failed to appear, the district court did not inform the attorney "that in making his explanation he was defending against a contempt charge." *Id.* ¶ 14. We reversed the district court's contempt citation, holding that the district court's summary contempt citation violated the prosecutor's right to notice and due process. *Id.* ¶¶ 14-15.

{16}     The district court's contempt citation against DDA Chavez suffers from the same flaw. When DDA Chavez responded to Defendants' motion for sanctions and appeared at the hearing thereon, he was not aware that contempt was on the table. Although DDA Chavez had a chance to explain his conduct in his response and at the hearing, the district court's failure to provide clear notice prior to the hearing that it was considering contempt prevented DDA Chavez from making an informed choice about whether and how to respond, whether he would attempt to present evidence, and whether to obtain the assistance of counsel. By keeping DDA Chavez ignorant of the serious sanction the district court was contemplating, the district court failed to give DDA Chavez the required level of notice and due process. We must therefore reverse.

**CONCLUSION**

{17} The district court's order holding DDA Chavez in indirect criminal contempt is reversed.

{18} **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**RODERICK T. KENNEDY, Judge**