The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: March 20, 2025

**NO. S-1-SC-39901**

**STATE OF NEW MEXICO,**

　　　Plaintiff-Appellee,

v.

**ALAN MAESTAS,**

　　　Defendant-Appellant.

**CERTIFICATION FROM THE NEW MEXICO COURT OF APPEALS**
**Melissa A. Kennelly, District Judge**

Kathryn Hardy Law
Kathryn J. Hardy
Taos, NM

for Appellant

Raúl Torrez, Attorney General
Aletheia V.P. Allen, Solicitor General
Santa Fe, NM

for Appellee

**OPINION**

**THOMSON, Chief Justice.**

{1}     Attorney Alan Maestas was found guilty of direct punitive contempt[1] for "refus[ing] to proceed to trial in defiance of the orders and warnings of the [c]ourt." The district court sanctioned Maestas to ten days in jail, with ten days suspended, and to pay a $1,000 fine to the New Mexico State Bar Foundation (the Foundation).[2] Maestas appealed, and the Court of Appeals certified to this Court the question of whether a contempt fine ordered payable to a third party is permitted by statute and the New Mexico Constitution. *See* Order of Certification to the New Mexico Supreme Court, *In re Maestas*, No. A-1-CA-40832 (N.M. Ct. App. May 4, 2023).

{2}     The certified question requires us to consider whether a fine payable to a third party is permitted under the judiciary's contempt power and Article VI, Section 30

---

[1]Both the Court of Appeals in their order of certification and the parties in their briefs use the term "criminal" contempt. In accordance with *In re Marshall*, 2023-NMSC-009, ¶ 23, 528 P.3d 670, we use the term "punitive" contempt throughout this opinion. We reiterate that "[c]ontempt charges formerly classified as either 'civil' or 'criminal' should instead be regarded as 'remedial' or 'punitive' to more accurately reflect the distinctions between the different types of contempt." *Id.*

[2]The Court of Appeals affirmed the district court's contempt finding but held that the initial sanction imposed by the district court was an abuse of discretion. *In re Maestas*, 2022-NMCA-057, ¶ 1, 517 P.3d 942. The sanction described here was imposed upon remand. *See* Judgment and Sentence on Mandate, *In re Maestas*, No. D-818-CR-2020-00038 (8th Jud. Dist. Ct. Nov. 03, 2022).

of the New Mexico Constitution. We review questions of statutory and constitutional interpretation de novo. *State v. Boyse*, 2013-NMSC-024, ¶ 8, 303 P.3d 830.

{3}     We hold that Maestas's fine payable to a third party is permitted under the judiciary's inherent and uniquely broad contempt power and is constitutional. In addition, the Legislature has not imposed a relevant constraint on the type of fine ordered against Maestas. We also clarify that only *fees collected*, not fines imposed, by the judicial department are subject to the limitations of Article VI, Section 30 of the New Mexico Constitution.

## I.      DISCUSSION

### A.      The Fine Payable to the Foundation Is Permitted Under the Judiciary's Contempt Power

{4}     Contempt is classified as either remedial (designed to coerce) or punitive (designed to punish). *In re Marshall*, 2023-NMSC-009, ¶¶ 12-13. An individual can be held in direct contempt for conduct committed in the presence of the court, or indirect contempt for conduct committed outside the presence of the court. *Id.* ¶ 14. In this case, Maestas was found guilty of direct punitive contempt and argues that contempt fines must be paid directly to the court.

{5}     The judiciary has inherent authority to preserve order by holding individuals in contempt. *State ex rel. Bliss v. Greenwood*, 1957-NMSC-071, ¶ 17, 63 N.M. 156, 315 P.2d 223. "The real basis of [the contempt] power is to be found in the doctrine

2

of separation of powers as provided for . . . in the New Mexico Constitution." *Id.* Even without statutory authority, courts have the power to require respect, decorum, and compliance with their mandates. *Concha v. Sanchez*, 2011-NMSC-031, ¶ 23, 150 N.M. 268, 258 P.3d 1060. This inherent authority is codified in NMSA 1978, Section 34-1-2 (1915) which provides that "[i]t shall be within the power of each and every presiding [officer] of the several courts of this state . . . to punish contempt[] by reprimand, arrest, *fine* or imprisonment." (Emphasis added.); *see also Concha*, 2011-NMSC-031, ¶ 22 ("[Section 34-1-2] is declaratory of the common law." (internal quotation marks and citation omitted)).

{6}    The judiciary's authority to hold individuals in contempt is uniquely broad and can only be constrained by the Legislature in limited circumstances. *See Concha*, 2011-NMSC-031, ¶¶ 23, 29-30. We require judges to exercise restraint to avoid abuse of this uniquely broad authority. *See id.* ¶ 30. For example, when imposing a sanction for punitive contempt, courts consider "the seriousness of the consequences of the contumacious behavior, the public interest in enforcing a termination of a defendant's defiance and the importance of deterring future defiance." *State v. Pothier*, 1986-NMSC-039, ¶ 5, 104 N.M. 363, 721 P.2d 1294. The Legislature may reasonably regulate the contempt power but may not "substantially impair or destroy" it. *In re Marshall*, 2023-NMSC-009, ¶ 10 (internal quotation marks and

citation omitted). The only legislative constraint on the judiciary's contempt power does not apply to the facts of this case. *See* NMSA 1978, § 44-3-10 (1919) (limiting the fine and jail sentence a court may impose for disobeying a court order to give up an office if another party is deemed entitled to it in a quo warranto proceeding). Significantly, this Court has, in the past, imposed a fine on an attorney payable to a third party as a sanction for punitive contempt. *See In re Marshall*, 2023-NMSC-009, ¶ 18 (affirming the appropriateness of requiring an attorney to pay a $2,000 punitive contempt sanction to the Client Protection Fund).

{7}    Maestas relies on *State v. Dominguez* to support his argument that his contempt fine must be paid directly to the court. 1993-NMCA-042, 115 N.M. 445, 853 P.2d 147.[3] In *Dominguez*, the defendant was convicted of aggravated battery

---

[3]Maestas makes other arguments related to *Dominguez*, but they are unclear and rely on citations to statutes that do not exist, citing for example Section 31-15-18 and Section 31-1-18. "We will not review unclear arguments, or guess at what a party's arguments might be." *Elane Photography*, *LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (brackets, internal quotation marks, and citation omitted). This Court will not consider propositions that are unsupported by citation to authority. *See Wilburn v. Stewart*, 1990-NMSC-039, ¶ 18, 110 N.M. 268, 794 P.2d 1197.

Maestas also relies on *Rhinehart v. Nowlin* for the holding that "the proceeding is one of criminal contempt, and the sanction is paid to the court." 1990-NMCA-136, ¶ 28, 111 N.M. 319, 805 P.2d 88. Maestas's quotation of *Rhinehart* is deceptively selective because the case was about the difference between remedial and punitive contempt, not about whether contempt fines must be paid to the court. *Id.* ¶¶ 28-29. We clarify today that while punitive contempt fines *may* be paid to the court, *Rhinehart* does not require that exclusively.

and sentenced to make a $500 donation to the Taos County Sherriff's Office. *Id.* ¶¶ 8, 45. The Court held that the donation was unauthorized because a "trial court's authority to sentence is only that which has been provided by statute" and, at the time, the relevant statute, NMSA 1978, § 31-20-6(E) (1988, amended 2007), only permitted donations to local crime stopper programs. *Dominguez*, 1993-NMCA-042, ¶¶ 47-48 (citation omitted). Maestas argues that *Dominguez* prohibits payments to third parties that are not explicitly permitted by Section 34-1-2.

{8}    We reiterate that the contempt power exists even absent Section 34-1-2, *see Concha*, 2011-NMSC-031, ¶ 23, and the corresponding power to sanction is not limited to what has been specifically provided by statute as the power to punish is in the criminal context, *State v. Chavarria*, 2009-NMSC-020, ¶ 12, 146 N.M. 251, 208 P.3d 896. Moreover, Section 31-20-6(E) (1988) enumerates specific conditions for when a judge defers or suspends a sentence, as opposed to Section 34-1-2, which broadly lists permissible sanctions for contempt, including fines. Maestas's argument that any sanction not permitted by Section 34-1-2 must be prohibited does not comport with how we interpret statutes. *See Coal. for Clean Affordable Energy v. N.M. Pub. Regul. Comm'n*, 2024-NMSC-016, ¶ 26, 549 P.3d 500 ("We will not read language into a statute that is not there." (citation omitted)). It also does not comport with how the Legislature regulates the contempt power: through clear and

specific limitations. *See* § 44-3-10. This argument, and its reliance on *Dominguez*, is unavailing.

{9} Therefore, Maestas's fine payable to the Foundation is permissible under the judiciary's contempt power because the power is both inherent and uniquely broad, especially where, as here, there is no relevant legislative constraint.

**B. The Fine Payable to the Foundation Is Constitutional**

{10} Under Article VI, Section 30 of the New Mexico Constitution, "[a]ll *fees collected* by the judicial department shall be paid into the state treasury as may be provided by law and no justice, judge or magistrate of any court shall retain any fees as compensation or otherwise." (Emphasis added.) Maestas argues that contempt fines must, according to constitutional mandate, be paid into the treasury. This is incorrect for two reasons: (1) a fine is not a *fee* and (2) the fine ordered payable to the Foundation was not *collected* by the judicial department.

{11} When interpreting the New Mexico Constitution, we apply the rules of statutory construction. *Boyse*, 2013-NMSC-024, ¶ 8. In doing so, "we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 13, 121 N.M. 764, 918 P.2d 350 (citation omitted). Under the plain meaning rule, "when a statute contains language which is clear and

unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 (brackets, internal quotation marks, and citation omitted).

{12}     The plain meaning of Article VI, Section 30 unambiguously provides that only *fees collected* by the judicial department must be paid into the state treasury and supports our conclusion that a fine is not a fee, and a fine made payable to a third party is not collected by the judicial department. Although our holding is based on the plain meaning of the constitutional provision, this Court's interpretation is supported by the historical context of Article VI, Section 30.

**1.     History of Article VI, Section 30 of the New Mexico Constitution**

{13}     The Legislature proposed Article VI, Section 30 in 1965 as part of a comprehensive scheme to "abolish justices of the peace and to establish magistrate courts." 1965 N.M. Laws, Constitutional Amendment No. 10, §§ 1-8 (detailing how the comprehensive scheme also included proposed amendments to Article VI, Sections 1, 18, 21, 26, and 27 and proposed additions of two Sections to Article VI). One common criticism of justices of the peace (JPs) was their method of compensation. Thomas A. Donnelly, N.M. Const. Revision Comm'n, The Justice of the Peace System in New Mexico 19; *see also* Philip T. Manly, State Jud. Sys. Study Comm., Constitutional Amendment No. 10 in the 1966 General Election 1 (1966).

JPs charged parties $7.50 for each case docketed in their court, $0.50 for each document notarized, and a discretionary fee for performing marriages. Donnelly, *supra*, at 16 (citing NMSA 1953, § 36-19-1 (1963)). Monthly, JPs sent these funds to the Administrative Office of the Courts (AOC), after which the AOC remitted back to JPs $5.00 for each case presided over in that same month. *Id.* (citing NMSA 1953 §§ 36-19-21, -24 (1963) ("Payments . . . due justices of the peace shall be at the rate of five dollars . . . for each civil and criminal case docketed.")); *see also* Manly, *supra*, at 1.

{14}     This system invited abuse. In criminal cases, JPs routinely found defendants guilty to encourage police officers to bring cases to their court instead of others, offered to split fees with officers, and actively encouraged officers to issue more citations. Manly, *supra*, at 1-2; *see also* Donnelly, *supra*, at 20; State Jud. Sys. Study Comm., The Courts in New Mexico: A Report to the Twenty-Fifth Legislature of New Mexico 11-12 (1961) (providing that when one JP was asked what he did if a defendant pled not guilty, he responded "I find them guilty"). In civil debt collection cases, JPs found in favor of creditors to encourage them to bring cases to their court in the future. Manly, *supra*, at 2; *see also* Donnelly, *supra*, at 19-20.

{15}     Legislators feared that the administration of justice was influenced by JPs effectively retaining the fees they collected. *See Chavez Blasts JP Fee Plan*,

8

Farmington Daily Times, Feb. 16, 1965, at 10 (quoting a former state senator saying, "Every complaint before a justice of the peace looks like a $5 bill"). It was "[o]nly by virtue of sheer volume of cases [that] the office of justice of the peace [was] a profitable one." Donnelly, *supra*, at 19. In response, the Legislature included Article VI, Section 30 in its proposal to abolish JPs, and in their place establish magistrate courts, effectively ending this method of compensation for judges in New Mexico. *See* 1965 N.M. Laws, Constitutional Amendment No. 10 § 6; *see also* Piecemeal Amendment of the Constitution of New Mexico Since 1911 21, 47 (Dec. 2018) (explaining that the constitutional amendments were approved in 1966 by a vote of 81,055 to 26,317).

**2.      A fine is not a fee**

{16}      Article VI, Section 30 of the New Mexico Constitution and Section 34-1-2 regulate two different things. Under their plain language, Article VI, Section 30 places restrictions on *fees* collected by the judicial department; Section 34-1-2 enumerates the common law principle that judges may punish contempt by *fine*. *Compare* N.M. Const. art. VI, § 30 ("[a]ll fees collected by the judicial department") *with* § 34-1-2 ("[i]t shall be within the power of each and every presiding [officer] . . . to punish contempt[] by . . . fine"); *see also Concha*, 2011-NMSC-031, ¶ 22.

{17} The common legal usage of the terms "fee" and "fine" support our holding. *Black's Law Dictionary* defines "fee" as "[a] charge or payment for labor or services, esp. professional services" and "fine" as "[a] pecuniary criminal punishment or civil penalty . . . ." (12th ed. 2024).[4] As explained in Part (B)(1), paragraphs 13 through 15, *supra*, Article VI, Section 30 was enacted to regulate fees paid for the court's professional services by providing that judges could not retain fees "as compensation or otherwise." In contrast here, Maestas's $1,000 fine payable to the Foundation was imposed as a punishment.

{18} Only two precedential New Mexico opinions consider the meaning of the terms "fee" and "fine." In *Dominguez*, the Court held that a $500 donation to the Taos County Sherriff's Office was unauthorized because the relevant statute only permitted donations to local crime stopper programs. 1993-NMCA-042, ¶ 48. The *Dominguez* Court relied on the statutory text to reach its conclusion, so did not reach the constitutional question of whether a fine is synonymous with a fee under Article

---

[4]The complete definition of "fine" is "[a] pecuniary criminal punishment or civil penalty *payable to the public treasury*." *Fine, Black's Law Dictionary* (12th ed. 2024) (emphasis added). As will be discussed later in this opinion, a punitive contempt fine in New Mexico need not be "payable to the public treasury."

10

VI, Section 30. 1993-NMCA-042, ¶ 48.[5] Thus, *Dominguez* has no bearing on our reasoning on this point. The Court also explained that the defendant's donation was punitive and therefore properly considered a fine, *see id.* ¶ 51 (citing *Black's Law Dictionary* (5th ed., abr. 1983)), an example of our courts comporting with the common legal usage of the term fine.

{19}     *Board of Commissioners v. Greacen*, is the only case to consider the meanings of "fee" and "fine" within the context of Article VI, Section 30. *See* 2000-NMSC-016, ¶¶ 26-27, 129 N.M. 177, 3 P.3d 672. In *Greacen*, Rio Arriba County enacted traffic ordinances almost identical to the State Motor Vehicle Code, sought enforcement of their violation in Española Magistrate Court, and then had the Magistrate direct the penalty payments received to the County Treasurer. *Id.* ¶¶ 2, 22. This Court invalidated the scheme, reasoning that "magistrate courts are clearly and unambiguously directed to send all monies collected to the Administrative Office of the Courts." *Id.* ¶ 24 (citing NMSA 1978, § 35-7-4 (1993, amended 2023),

---

[5]In *State v. Darner*, A-1-CA-29768, mem. op. ¶ 20 (N.M. Ct. App. Sept. 26, 2013) (nonprecedential), the Court of Appeals cited Article VI, Section 30 and *Dominguez* in the same string citation to support the proposition that a fine payable to a third party was unpermitted. While this citation suggests that *Dominguez* stands for the proposition that a fine payable to a third party violates the constitutional provision, we expressly hold today that *Dominguez* reaches no such holding on Article VI, Section 30 and disavow *Darner* to the extent that it suggests as much.

11

which states "[e]ach magistrate court shall pay to the Administrative Office of the Courts . . . the amount of all fines, forfeitures and costs collected by him during the previous month.")

{20}     Unlike the Court in *Dominguez*, which relied solely on the statutory text, the *Greacen* Court referenced Article VI, Section 30 to support its conclusion. *Greacen*, 2000-NMSC-016, ¶ 26. The Court reasoned that "penalties" as described in the Rio Arriba County Code were not distinct from "fees" as described in the constitutional provision because penalties are public money under NMSA 1978, Section 35-7-5(A) (1979, amended 2021), which states that "[a]ll money collected by a magistrate court . . . is public money of the state." *Greacen*, 2000-NMSC-016, ¶ 27. The Court's reasoning suggests that "public money" under Section 35-7-5(A) (1979)—whether called a "fee" or a "fine"—is synonymous with "fees collected by the judicial department" that must be "paid into the state treasury" under Article VI, Section 30. In so reasoning, the Court seemed to ignore that the terms fee and fine have distinct common legal usages.

{21}     Having invalidated Rio Arriba County's scheme as contrary to statute, it was imprudent for the *Greacen* Court to consider whether the scheme was allowed under Article VI, Section 30. *See Lovelace Med. Ctr. v. Mendez*, 1991-NMSC-002, ¶ 12, 111 N.M. 336, 805 P.2d 603 ("It is, of course, a well-established principle of

12

statutory construction that statutes should be construed, if possible, to avoid constitutional questions."). Today we make clear that the *Greacen* Court's conclusion that penalties or fines are synonymous with fees for the purpose of Article VI, Section 30 ignores the common legal usages of the terms and is incorrect.

**3.     Fines merely imposed have not been collected**

{22}     Article VI, Section 30 of the New Mexico Constitution states that "[a]ll fees *collected* by the judicial department shall be paid into the state treasury." (Emphasis added.) The State argues that the provision "makes sense as written: fees *collected* by the judiciary are state funds." It further argues that the provision "does not prohibit courts from *imposing* fines that are payable to other entities, or require that such fines be collected by the court."; *See Coal. for Clean Affordable Energy*, 2024-NMSC-016, ¶ 26 ("We will not read language into a statute that is not there." (citation omitted)). We agree with the State on this and two other points it makes that support a plain language reading of the provision.

{23}     First, *Greacen* is a case about penalties that had already been *collected* and that Rio Arriba County wanted to *retain*, which is not analogous to the *imposition* of a fine payable to a third party. The history of Article VI, Section 30, discussed in Part (B)(1), paragraphs 13 through 15, *supra*, makes it clear that the provision was passed to solve a problem specific to fees that had already been collected by the

judicial department. JPs were incentivized to reach certain legal conclusions to increase their caseload, collect more fees, and raise their salaries. The present case, in which a judge imposed a fine payable to a third party, does not create a similar problem. The fine will never be collected by the judicial department and therefore cannot be retained by the judge.

{24} Second, the State correctly argues that a reading of Article VI, Section 30 that prevents the imposition of fines payable to third parties would render statutes such as Section 31-20-6(E), authorizing trial courts to order charitable contributions to local crime stopper programs, unconstitutional. Further, many court administration statutes use collection-focused language similar to that in Article VI, Section 30.[6] Reading those statutes as prohibiting fines made payable to third parties would also render statutes such as Section 31-20-6(E) contrary to statute. We operate "under the

---

[6]The statutes governing magistrate, district, and appellate courts use the term "collected," or alternately, "received." *See* § 35-7-5(A) ("All money *collected* by a magistrate court . . . is public money of the state held in trust by the district court . . . ." (emphasis added)); NMSA 1978, § 34-6-37 (1968) ("All fines, fees, costs and other money *received* by the clerk" in district court "shall be deposited" in an account in the name of the state treasurer. (emphasis added)); NMSA 1978, § 34-5-6(A), (C) (2003) ("The clerk of the court of appeals shall *collect* the following fees . . . [and] the clerk of the court of appeals shall pay all fees and costs to the state treasurer . . . ." (emphasis added)); NMSA 1978, § 34-2-5 (2003) ("The clerk of the supreme court shall *collect* the following fees . . . ." (emphasis added)); NMSA 1978, § 34-2-6 (1974) ("The clerk [of the Supreme Court] shall pay such fees into the state treasury to be retained as earnings of the state . . . .").

14

presumption that the legislature acted with full knowledge of relevant statutory and common law and did not intend to enact a law inconsistent with existing law." *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 38, 329 P.3d 658 (alterations, internal quotation marks, and citation omitted).

{25}    Maestas argues that allowing judges to direct fines to third parties "may be another way for judges to unlawfully gain a benefit similar to, or equivalent of, a retention of a fee as compensation." We believe this theoretical critique is unfounded. If an appellate court determines that a fine was made payable to a third party for an improper reason, the Court may invalidate the fine as an abuse of discretion. *See Case v. State*, 1985-NMSC-103, ¶ 5, 103 N.M. 501, 709 P.2d 670 (defining abuse of discretion as "a decision that is clearly untenable and clearly against reason and evidence" (citation omitted)).

{26}    In conclusion, Maestas's fine payable to the Foundation is constitutional because only *fees collected* by the judicial department fall within the ambit of Article VI, Section 30.

**II.    CONCLUSION**

{27}    The district court was permitted to order Maestas's $1,000 fine payable to the Foundation under the judiciary's contempt power and its order does not violate Article VI, Section 30 of the New Mexico Constitution.

{28}   Having decided the certified question, this matter is remanded to the Court of Appeals for consideration of the other issues raised on appeal by Maestas.

{29}   **IT IS SO ORDERED.**

_____

**DAVID K. THOMSON, Chief Justice**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Justice**

_____

**C. SHANNON BACON, Justice**

_____

**JULIE J. VARGAS, Justice**

_____

**BRIANA H. ZAMORA, Justice**